## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH CARR, BRENDA MOORE, AND MARY ELLEN WILSON<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br><br>Defendant. | Civil Action No. 3:22-cv-00988<br><br><br>August 3, 2022 |

## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

As more fully set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that this Honorable Court grant a temporary restraining order, pursuant to Fed. R. Civ. P. 65(b), against the Defendant with respect to enforcement of his Interim Final Rule ("IFR") under Section 6008 of the Families First Coronavirus Response Act ("Coronavirus Response Act" or "FFCRA"), for plaintiffs Deborah Carr and Brenda Moore, and set down a hearing for Defendant to show cause why a broader preliminary injunction pursuant to Fed. R. Civ. P. 65(b) on behalf of all Plaintiffs should not immediately be granted in light of the Defendant's multiple and ongoing violations of the Administrative Procedures Act ("APA") in the issuance of the IFR and the irreparable harm it has caused and is continuing to cause, as also set forth in the accompanying memorandum.

In support thereof, Plaintiffs aver:

1.      Under the Coronavirus Response Act, during the federally-declared public health emergency ("PHE") arising from the COVID-19 pandemic which has been in effect since January of 2020, state Medicaid agencies that accept enhanced federal Medicaid reimbursements are prohibited from terminating anyone from Medicaid, or from reducing their Medicaid benefits, if they were on such benefits on or after March 18, 2020 when the Coronavirus Response Act was passed, whether or not they appear to still be eligible for those benefits, and with only two statutory exceptions to this continuous enrollment requirement: the individual  (1) moved out of state or (2) voluntarily asked to be removed from the rolls.

2.      In exchange for agreeing to these protections designed to help particularly vulnerable individuals during the PHE, each state has been provided with an extra 6.2% in reimbursements for almost all of their Medicaid expenditures, including for the vast majority of Medicaid enrollees who would remain fully eligible for Medicaid regardless of the Coronavirus Response Act and the PHE.

3.      Defendant, contemporaneous with the passage of the Coronavirus Response Act and repeated three times thereafter, issued a series of guidance documents to the public and all state Medicaid agencies making clear that the above two exceptions were the *only* exceptions and that any termination of Medicaid benefits during the PHE that did not fall under one of them would violate the Coronavirus Response Act.

4.      Defendant also advised all state Medicaid agencies both contemporaneously with passage and on May 5, 2022 that any "***reduction** in medical assistance would be **inconsistent with the requirement at section 6008(b)(3) of the FFRCA*** that the state ensure that beneficiaries be treated as eligible for the benefits in which they were enrolled as of or after March 18, 2020, through the end of the month in which the emergency period ends." Center for Medicare and Medicaid Services

("CMS"), *COVID-19 Frequently Asked Questions (FAQs) for State Medicaid and Children's Health Insurance Program (CHIP) Agencies* 26 (May 5, 2020) (emphasis added).

5.      Plaintiffs, all low-income disabled individuals residing in Connecticut, have been on full-benefit Medicaid on or after March 18, 2020, under the Connecticut Medicaid "expansion" program known as "HUSKY D."

6.      These individuals were each accordingly kept on such benefits despite a determination by the Connecticut Department of Social Services ("DSS") that they had qualified for Medicare, which, but for the protections of the Coronavirus Response Act, would normally disqualify them from the HUSKY D program under federal law..

7.      Thereafter, under a new IFR published by President Trump's Administration in the Federal Register on November 6, 2022, the Defendant purported to interpret a new-found "ambiguity" in the Coronavirus Response Act which allowed it to create from whole cloth several entirely new exceptions to the continuous enrollment requirements under the Coronavirus Response Act.  85 Fed. Reg. 71142, 71160.

8.      The IFR newly authorized or required states to reduce or entirely eliminate Medicaid coverage for individuals who: (1) are eligible for Medicare and financial assistance to pay for out-of-pocket Medicare costs under a limited benefit Medicare Savings Program ("MSP"); (2) are deemed not "validly enrolled" at the time of the passage of the Coronavirus Response Act; or (3) are non-citizens otherwise losing Medicaid coverage because of being in the United States less than five years and no longer being pregnant or a child, 42 C.F.R § 433.400 (c)(2) and (d)(2).

9.      The IFR was adopted without affording the public the prior notice and opportunity for comment normally required under the APA, without explaining the source of the  new-found

statutory ambiguity it invoked to justify its abrupt about-face on the meaning of Section 6008(b)(3) of the Coronavirus Response Act, and without addressing how cutting people off of Medicaid under 42 C.F.R. § 433.400 was consistent with either the Coronavirus Response Act or the Medicaid Act, or why it was necessary to implement its new rule without adhering to prior notice and comment procedures.

10.     Defendant later pronounced to all state Medicaid agencies that these newly created exceptions to the continuous enrollment requirements of the Coronavirus Response Act were not only authorized but mandated by the IFR.

11.     Subsequently, each of the plaintiffs, along with at least 6,600 other low-income Connecticut Medicaid enrollees, was terminated from their full-scope Medicaid benefits by DSS upon orders from the Defendant that all such individuals must be terminated, despite the protections of the Coronavirus Response Act.

12.     Because Medicare provides significantly fewer health benefits than Medicaid, and the Medicare Savings Programs are merely financial assistance programs that help with the costs of health services covered under Medicare and do not provide any coverage for services not covered by Medicare, each of the individuals cut off under this newly-created exception has lost, and continues to go without, HUSKY D coverage and thus vital health care services to which they are entitled under the Coronavirus Response Act.

13.     In the case of two of the three plaintiffs, Deborah Carr and Brenda Moore, this has resulted in the termination of their coverage for extensive home care services that they require to address some or all of their activities of daily living, which they are unable to engage in due to severe disabilities related to chronic medical conditions, respectively, Freidrich's Ataxia and severe circulatory problems.

14.     Without these services, Ms. Carr will be unable to dress, transfer from her wheelchair or out of bed, use the toilet, bathe and eat.

15.     Similarly, absent these services, Ms. Moore will be unable to bathe, dress, transfer, clean herself after using the bathroom and prepare meals, and will be subject to harmful falls, as have happened in the past.

16.     Additionally, without these crucial services, both of these two individuals are threatened with unnecessary institutionalization in a nursing facility during the COVID crisis, which has seen a shockingly high numbers of deaths in such facilities, particularly in Connecticut.

17.     As of today, each of these individuals is receiving these vital health services on a temporary basis, Ms. Carr because she timely requested a hearing to challenge the termination and is receiving "aid pending" the decision on her appeal, and Ms. Moore because she was able to satisfy a one-time spenddown to qualify for a different full-benefit Medicaid program for a limited period that expires on August 31, 2022.

18.     Ms. Carr will immediately be terminated from HUSKY D and thus access to all of her home care services if she loses her appeal challenging the legality of the IFR and asking that it be invalidated in her case, which DSS's counsel told the hearing officer at the hearing in her case she has no authority to do; that decision could be issued **at any time**.

19.     Ms. Moore will immediately lose her full benefit Medicaid coverage on **August 31, 2022** when her one time eligibility under the spenddown process (under a different full-benefit Medicaid program) comes to a close, as she lacks the ability to incur the large amount of medical bills needed to satisfy another spenddown period.

20.     Irreparable harm is readily established for all individuals cut off of full benefit Medicaid based on the IFR.

21.     Plaintiffs are likely to succeed on the merits of their claims that the APA was violated both by the procedures followed by Defendant in adopting the IFR and by the issuance of a rule that contradicts the plain meaning of, and is therefore unauthorized under, the Coronavirus Response Act. Indeed, as shown in the accompanying memorandum, there is a "clear and substantial" likelihood of success on the merits of their claims warranting mandatory temporary and preliminary injunctive relief.

22.     The balance of equities weighs in favor of Plaintiffs.

23.     The granting of the requested temporary restraining order and preliminary injunction is in the public interest.

24.     Plaintiffs have no adequate remedy at law.

25.     In the case of Plaintiffs Carr and Moore, they will lose all of their home health care services, and thus be immediately subject to the risk of unnecessary institutionalization, sometime in the month of August.

26.     A temporary mandatory restraining order is warranted to prevent further irreparable harm to these two Plaintiffs.

27.     Plaintiffs, being low income and subject to severe harm if a TRO is not granted, are unable, and should be relieved of the duty, to post a security bond.

28.     Plaintiffs have provided advance notice to the Defendant of this Motion.

29.     This Motion is supported by the Memorandum of Law filed herewith; the Declarations of Plaintiffs Deborah Carr, Brenda Moore and Mary Ellen Wilson; the Declaration of Sheldon V. Toubman in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction; and the exhibits attached thereto.

*WHEREFORE*, for the reasons set forth above and in the accompanying Memorandum and supporting exhibits, Plaintiffs respectfully request that the Court:

1. Immediately enter a temporary restraining order requiring Defendant to instruct the Connecticut Department of Social Services that it may not enforce 42 C.F.R. § 433.400(c)(2)(i)(B) under the Interim Final Rule with respect to plaintiffs Deborah Carr and Brenda Moore and that they must be kept on full-benefit Medicaid pending the hearing on plaintiffs' Motion for a Preliminary Injunction.

2. Schedule a date for an August hearing on plaintiffs' motion for a preliminary injunction.

3. Grant a preliminary injunction enjoining Defendant from enforcing 42 C.F.R. § 433.400 under his Interim Final Rule and requiring him to notify all states (1) that they may not apply any provisions of 42 C.F.R. § 433.400 under the IFR, and (2) that they must immediately reinstate anyone cut off of full benefit Medicaid since the implementation of the IFR based on any of the extra-statutory exceptions not contained in the Coronavirus Response Act itself (*i.e.*, for a reason other than voluntarily getting off of Medicaid or leaving the jurisdiction, including through death).

DATED:  August 3, 2022

Respectfully Submitted,

SHELDON V. TOUBMAN
Fed Bar No. ct08533
Phone: (475)345-3169
E-mail: sheldon.toubman@disrightsct.org
DEBORAH A. DORFMAN (Application
for Admission *Pro Hac Vice* pending)
CT Juris No. 442946
Phone: (860)469-4463
E-mail: deborah.dorfman@disrightsct.org
Disability Rights Connecticut
846 Wethersfield Avenue
Hartford, CT 06114

CAROL A. WONG (Application for
Admission *Pro Hac Vice* pending)
DC Bar No. 1035086
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1995
E-mail: cwong@justiceinaging.org


REGAN BAILEY (Application for
Admission *Pro Hac Vice* pending)
DC Bar No. 465677
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org

JANE PERKINS
NC Bar No. 9993
CA Bar No. 104784
Email: perkins@healthlaw.org
MIRIAM HEARD
NC Bar. No. 39747
Email: heard@healthlaw.org
(Applications for Admission *Pro Hac Vice*
pending)
National Health Law Program
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Phone: (984) 278-7661

HARVEY L. REITER
(Application for Admission *Pro Hac Vice*
pending)
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 2006
Email: harvey.reiter@stinson.com
Phone: (202)728-3016
Fax: (202)572-9968

PLAINTIFFS' COUNSEL

se

## Certificate of Service

I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by overnight delivery to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by overnight delivery to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/Sheldon V. Toubman\
Sheldon V. Toubman