# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH CARR, BRENDA MOORE, & MARY ELLEN WILSON, MARY SHAW, and CAROL KATZ, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:22-cv-0988 (MPS) |
| v. | |
| XAVIER BECERRA, SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES | August 26, 2022 |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# Table of Contents

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 4

A. Factual and Legal Background ..................................................................... 4

B. The Amended Complaint .............................................................................. 5

C. Defendant's Actions that Harm Members of the Class ............................... 6

D. The Named Plaintiffs .................................................................................... 7

    1. Deborah Carr ......................................................................................... 8

    2. Brenda Moore ........................................................................................ 9

    3. Mary Ellen Wilson ............................................................................... 10

    4. Mary Shaw ........................................................................................... 11

    5. Carol Katz ............................................................................................ 12

III. THE PROPOSED CLASS MEETS THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE. ................... 14

A. The Proposed Class ..................................................................................... 14

B. The Standards for Class Certification ......................................................... 15

C. The Plaintiffs Have Presented Sufficient Evidence to Support Their Motion............. 18

D. The Proposed Class Meets all of the Requirements for Class Certification ................. 20

    1. The Proposed Class Meets the Requirements of Rule 23(a)................................... 20

    2. This Action Meets the Requirements of Rule 23(b)(2). ......................................... 33

E. Plaintiffs' Counsel Should Be Appointed Co-Class Counsel Pursuant to Rule 23(g)... 35

IV.  CONCLUSION AND REQUESTED RELIEF ................................................. 40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Azar*,
  No. 3:11-cv-1703 (MPS) 2020 WL 1430089 (D. Conn. 2020), *aff'd* 24 F.4th
  116 (2nd Cir. 2022)..................................................................................................38

*Alexander v. Price*,
  275 F.Supp.3d (D CT, 2017) ...................................................................................38

*Allegheny Electric Coop., Inc. v. FERC*,
  922 F.2d 73 (2nd Cir. 1990)....................................................................................39

*Allen, v. Western State Hosp.*,
  3:99-cv-05018 (W.D. WA 1999)(RJB) ...................................................................37

*Amara v. Cigna Corp.*,
  925 F. Supp. 2d 242 (D. Conn. 2012), *aff'd* 775 F.3d 510 (2d Cir. 2014) .............23

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................15

*American Gas Ass'n v. FERC*,
  912 F.2d 1496 (D. C. Cir. 1990)..............................................................................39

*Amgen Inc., v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)............................................................................................18, 19

*Anderson v. Pa. Dep't of Pub. Welfare*,
  1 F. Supp. 2d 456 (E.D. Pa. 1998) ..........................................................................25

*Appleyard v. Wallace*,
  754 F.2d 955 (11th Cir. 1985) .................................................................................24

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994)............................................................................24

*Arthur v. Sallie Mae, Inc.*,
  No. C10-0198JLR, 2012 WL 90101 (W.D. Wash. Jan. 10, 2012).........................17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000).......................................................................................30

*Barrows v. Becerra*,
   24 F.4th 116 (2d Cir. 2022) ....................................................................2, 17

*Bellin v. Zucker*,
   6 F.4th 463 (2d Cir. 2021) ...........................................................................31

*Benjamin H v. Ohl*,
   1999 WL 34783552 (SD WV 1999) .............................................................39

*Boyle, v. Dreyfus*,
   2010 WL 2671385 (WD WA 2010) ........................................................37, 38

*Brand X Internet Services v. FCC*,
   345 F.3d 1120 (9th Circ. 2003), *rev'd Nat'l Cable & Tel. Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005) ...................................................39

*Califano v. Yamasaki*,
   442 U.S. 682 (1979).......................................................................................23

*California Public Utilities Comm'n v. FERC*,
   879 F.3d 966 (9th Cir. 2018) ........................................................................39

*Carr v. Wilson-Coker*,
   203 F.R.D. 66 (D. Conn. 2001)......................................................................21

*Charron v. Pinnacle Group N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) ...................................................................33

*Chinatown Service Center, et al. v. HHS*,
   No. 1:21-cv-0031-JEB ...................................................................................40

*Chinatown Service Center v. U.S. Department of Health and Human Services*,
   1:21-cv-00331-JEB (D.D.C.) (compl. filed Feb. 5. 2021)............................38

*City of Gaithersburg, Md. et al. v. Dept. of Homeland Security*,
   No. 8:19-cv-02851-PWG (D. Md. 2019)........................................................39

*City of Redding, Ca. v. FERC*,
   693 F.3d 8328 (9th Cir. 2012) ......................................................................39

*Coley v. Clinton*,
   635 F.2d 1364 (8th Cir. 1980) ................................................................33, 34

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................................................19

*Comer v. Cisneros*,
   37 F.3d 775 (2nd Cir. 1994)..........................................................................15

*Conn. State Dep't. of Social Services v. Shalala*,
  No. 3:99 CV 2020 SRU, 2000 WL 436616 (D.Conn. Feb. 28, 2000)......................2

*Connecticut Dept. of Public Utility Control v. FERC*,
  593 3d 30 (D. C. Cir. 2010) ........................................................................39

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..........................................................................22

*Daniels v. City of New York*,
  198 F.R.D. 409 (S.D.N.Y. 2001) .................................................................16

*Davis v. Shah*,
  2012 WL 1574944 (W.D. N.Y. May 3, 2012).............................................38

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016), (W.D. N.Y. Dec. 9, 2013)..........................38

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).........................................................................32

*DeSario. v Thomas*,
  139 F.3d 80 (2d Cir. 1998), *vacated and remanded*, *Slekis v. Thomas,* 119
  S.Ct. 864 (1999)..........................................................................................37

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .......................................................................17

*Evans v. Williams*,
  139 F.Supp.2d 79 (D. D.C. 2001) ...............................................................39

*Exley v. Burwell*,
  No. 3:14-CV-1230-JAM, 2015 WL 3649632 (D. Conn. June 10, 2015) ...............2, 23, 29, 30

*In re FCC 11-161*,
  753 F.3d 1015 (10th Cir. 2014) ...................................................................39

*Federal Energy Regulatory Commission v. Electric Power Supply Ass'n*,
  577 U.S. 260 (2016)......................................................................................39

*In re Ferrero Litig.*,
  278 F.R.D. 552 (S.D. Cal. 2011) .................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)...........................................................................30

*Fox v. Bowen*,
  656 F. Supp. 1236 (D. Conn. 1987)...............................................................2

iv

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 157 (1982)..................................................................................................18, 28

*Gray v. Golden Gate Nat'l Recreational Area*,
    866 F. Supp. 2d 1129 (N.D. Cal. 2011) ...........................................................17

*Guadagna v. Zucker*,
    332 F.R.D. 86 (E.D.N.Y. 2019) .........................................................................16

*Haddock v. Nationwide Fin. Services*,
    293 F.R.D. 272 (D. Conn. 2013)........................................................................23

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988)................................................................................24

*Holmes v. Cont'l Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) .........................................................................33

*James v. City of Dallas, Tex.*,
    254 F.3d 551 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel.*
    *Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)....................................28

*Jane B. v. N.Y. City Dept. of Social Servs.*,
    117 F.R.D. 64 (S.D.N.Y. 1987) .........................................................................33

*Karen L., ex rel. Jane L. v. Physicians Health Services*,
    202 F.R.D. 94 (D. Conn. 2001)....................................................................2, 37

*Jeronimo Diaz de Jesus v. DHS*,
    No. 22-cv-214 (filed Jan. 28, 2022, D. Md. 2022) ....................................39

*Johnson v. General Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011) ......................................................................17

*K.C. v. Wos*,
    716 F.3d 107(4th Cir. 2013), (E.D.N.C. Mar. 29, 2012) ........................38

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
    300 F.R.D. 67 (D. Conn. 2014).........................................................................22

*Ladd v. Thomas*,
    47 F.Supp.2d 236 (D. Conn. 1999) ..................................................................37

*Ladd v. Thomas*,
    962 F. Supp. 284 (D. Conn 1997)...............................................................2, 37

*Landers v. Leavitt*,
    232 F.R.D. 42 (D. Conn. 2005)............................................................................2

*Lightbourn v. County of El Paso*,
  118 F.3d (5th Cir. 1997) ...............................................................................24

*Linsely v. FMS Inv. Corp.*,
  288 F.R.D. 11 (D. Conn. 2013).......................................................................23

*Manker v. Spencer*,
  329 F.R.D. 110 (D. Conn. 2018).....................................................................22

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d 1997)...............................................................24, 28, 30, 34

*Marr ex rel, Marr v. Eastern State Hosp.*,
  CV-02-0067-WFN (E.D.WA 2002) ................................................................37

*Matyasovszky v. Housing Auth. of the City of Bridgeport*,
  226 F.R.D. 35 (D. Conn. 2005).......................................................................29

*Maziarz v. Hous. Auth. of the Town of Vernon*,
  281 F.R.D. 71 (D. Conn. 2012)..........................................................23, 28, 29, 30

*McBean v. City of N.Y.*,
  260 F.R.D. 120 (S.D.N.Y. 2009) .....................................................................33

*Menking ex. rel. Menking v. Daines*,
  287 F.R.D. 174 (S.D.N.Y. 2012) .....................................................................16

*Messier v. Southbury Training Sch.*,
  183 F.R.D. 350 (D.Conn. 1988).......................................................................33

*Montanez v. Gerber Childrenswear, LLC*,
  No. CV 09-7420 DSF, 2011 WL 6757875 (C.D. Cal. Dec. 15, 2011) ...................17

*Morrison v. Ocean State Jobbers, Inc.*,
  290 F.R.D. 347 (D. Conn. 2013).......................................................................23

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011)................................................................17, 25

*N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*,
  593 F.2d 642 (5th Cir.), *cert. denied*, 444 U.S. 956 (1979).................................32

*Neff v. VIA Metro. Transit Auth.*,
  179 F.R.D. 185 (W.D. Tex. 1998) ...................................................................25

*New Jersey Bd. of Public Utilities v. FERC*,
  744 F. 3d 74 (3d Cir. 2014)...........................................................................39

*Noble v. 93 Univ. Place Corp.*,
  224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................................21

*O.B. v. Norwood*,
  838 F.3d 837 (7th Cir. 2016), (N.D. Ill. 2016) ..................................................38

*Oster v. Lightbourne*,
  No. C 09-4668 CW, 2012 WL 685808 (N.D. Cal. Mar. 2, 2012) ........................17

*Parkinson v. Freedom Fidelity Mgmt., Inc.*,
  No. CV-10-345-RHW, 2012 WL 72820 (E.D. Wash. Jan. 10, 2012) ..................17

*Pashby v. Cansler*,
  279 F.R.D. 347 (E.D.N.C. 2011) ......................................................................17

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013), (E.D.N.C. 2011) ................................................38

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................29

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanely & Co., Inc.*,
  772 F.3d 111, 120 (2d Cir. 2014) ......................................................................22

*Perkins v. S. New England Tel. Co.*,
  669 F. Supp. 2d 212, 223-24 (D. Conn. 2009) ..................................................28

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) .........................................................................16, 32

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004) ......................................................................21

*Risinger ex rel. Risinger v. Concannon*,
  201 F.R.D. 13 (D. Me. 2001) ...........................................................................29

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................................... *passim*

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) ..................................................................32

*Rust v. Western State Hosp.*
  (W.D. WA 2001) ..............................................................................................37

*Sacramento Municipal Utility Dist. v. FERC*,
  No. 2:17-cv-02461-TLN-AC (E.D. Ca.) ...........................................................39

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016)........................................................................31

*Shady Grove Orthopedic Associates P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)................................................................................16

*Shafer v. Bremby*,
    2013 WL 12291027 (D. Conn. 2013) .......................................................37

*Sherman v. Burwell*,
    No. 3:15-CV-01468 (JAM), 2016 WL 4197575 (D. Conn. Aug.8, 2016) ..............................2

*Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2007)................................................................17

*Sneede v. Kizer*,
    856 F. Supp. 526 (1994) ...........................................................................38

*Sneede v. Kizer*,
    728 F. Supp. 1003 (N.D. Cal. 1990) ..........................................................38

*State of Conn. Office of Protection & Advocacy for Persons with Disabilities v.
Connecticut*,
    706 F. Supp. 2d 266 (D. Conn. 2010) ...........................................21, 24, 33

*Steward* v. *Janek*,
    315 F.R.D. 472 (W.D. Tx. 2016) ...............................................................37

*Sykes v. Mel S. Harris and Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015).........................................................................30

*Terkel v. Centers for Disease Control & Prevention*,
    15 F. 4th 683 (5th Cir. 2021) .....................................................................39

*Thompson v. Raiford*,
    No. 3:92–CV–1539–R, 1993 WL 497232 (N.D. Tex. Sept. 24, 1993) situ1984....................17

*Tiro v. Public House Inv., LLC*,
    288 F.R.D. 272 (S.D.N.Y. 2012) ...............................................................21

*Transmission Access Policy Study Group v. FERC*,
    225 F.3d 667 (D. C. Cir. 2000)..................................................................39

*V.L. v. Wagner*,
    669 F. Supp.2d 1106 (N.D. Cal. 2009) ......................................................37

*Connor B. ex. rel. Vigurs v. Patrick*,
    278 F.R.D. 30 (D. Mass. 2011)..................................................................17

*Wal-Mart, Inc. v. Dukes* ................................................................................................ *passim*

*WB v Marstiller*,
    3:21-cv-00771 (M.D. Fla.) ...................................................................................38

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y. Purchase Collage*,
    331 F.R.D. 279 (S.D.N.Y. 2019) .........................................................................32

*White v. Mathews*,
    559 F.2d 852 (2d Cir. 1977) .................................................................................34

*Wilson-Coker v. Shalala*,
    No. 3:00 C 1312 (CFD), 2001 WL 930770 (D. Conn. Aug. 10, 2021) .................2

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972), *abrogated on other grounds* 437 U.S. 478
    (1978) .........................................................................................................21, 24, 33

## Statutes

5 U.S.C. § 553 ......................................................................................................................25

5 U.S.C. § 553(b)(B) ......................................................................................................6, 25

5 U.S.C. § 706(2)(A)-(D) .....................................................................................................25

16 Del. Admin Code 17300 *et seq* ......................................................................................13

Coronavirus Response Act Section 6008 ...................................................................... *passim*

Coronavirus Response Act Section 6008(b)(3) ......................................................................1

Families First Coronavirus Response Act.............................................................................1

Social Security Act Title XIX ...............................................................................................1

## Regulations

42 C.F.R. § 431.230(b) ...........................................................................................................9

42 C.F.R. §433.400 ...................................................................................................... *passim*

42 C.F.R. § 433.400(c)(2)(1)(B). 2nd .....................................................................................7

85 Fed. Reg. 71142, 71160 .....................................................................................................1

## Rules

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Fed. R. Civ. P. 23(a) ...................................................................................15, 16, 20, 28

Fed. R. Civ. P. 23(a)(1) .....................................................................................20, 22

Fed. R. Civ. P. 23(a)(2) .................................................................................23, 24, 28

Fed. R. Civ. P. 23(a)(3) ........................................................................................29, 30

Fed. R. Civ. P. 23(a)(4) ...................................................................................30, 31, 35

Fed. R. Civ. P. 23(a) and (b)(2) ....................................................................................20

Fed. R. Civ. P. 23(b) ...........................................................................................15, 16

Fed. R. Civ. P. 23(b)(2) ............................................................................................ *passim*

Fed. R. Civ. P. 23(g) ...................................................................................35, 36, 40

Fed. R. Civ. P. 23(g)(1) .............................................................................................35

Fed. R. Civ. P. 23(g)(1)(B) ......................................................................................36

Fed. R. Civ. P. 23(g)(4) .............................................................................................35

**Other Authorities**

7 Newberg on Class Actions § 23:1 (4th ed. 2002) ....................................................15

Advisory Committee Note on Rule 23, 39 F.R.D. 69, 102 (1966) ..........................33, 34

*Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000) ...................................................28

7A Wright, Miller & Kane, Federal Practice and Procedure § 1762 (3d ed. 2005) .....................20

## I.    INTRODUCTION

This case seeks to stop Defendant Secretary of the U.S. Department of Health and Human Services ("HHS") from unlawfully requiring states to terminate or reduce Medicaid[1] benefits for hundreds of thousands of class members throughout the United States during the pandemic, and to order him to instruct the states to restore benefits for those who already illegally lost them. Defendant's final action is in direct conflict with the Families First Coronavirus Response Act ("Coronavirus Response Act" or "FFCRA"), which conditions the enhanced federal Medicaid funding on the state refraining from terminating or reducing Medicaid coverage during the ongoing public health emergency ("PHE"). Specifically, these violations include procedural and substantive violations of the Administrative Procedure Act ("APA"). Defendant's implementation of the portion of the Interim Final Rule ("IFR"), 85 Fed. Reg. 71142, 71160, codified at 42 C.F.R. §433.400, contradicts Section 6008(b)(3) of the Coronavirus Response Act. The IFR requires states to eliminate or reduce the amount, duration, and scope of services available to individuals enrolled in Medicaid on or after March 18, 2020, even if neither of the two Coronavirus Response Act statutory exceptions to maintenance of benefits applies. Defendant also failed to go through the requisite rule-making notice and comment requirements of the APA. Am. Compl., ¶¶ 8, 17, 81, 92, 95, 154.

The Named Plaintiffs seek injunctive and declaratory relief including: 1) a declaration from the Court that Defendant's issuance of the IFR procedurally and substantively violated the

---

[1] Title XIX of the Social Security Act establishes the medical assistance program known as Medicaid. *See id.* §§ 1396-1396w-5. The purpose of the Medicaid program is to enable each state, as far as practicable, "to furnish [] medical assistance" to individuals "whose income and resources are insufficient to meet the costs of necessary medical services" and to provide "rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care." *Id.* § 1396-1. The Medicaid program is implemented federally by HHS. Within HHS, the Center for Medicare and Medicare Services ("CMS") is responsible for administration of the Medicaid program. States do not have to participate in Medicaid, but all do. For a full explanation of the Medicaid program, *see* Plaintiffs' Memorandum in Support of Motion for a Temporary Restraining Order and a Preliminary Injunction, ECF Docket #.3-1 at pp. 14-17, incorporated herein by reference.

APA, and 2) a finding that Defendant's implementation of the enhanced Federal Medical

Assistance Percentage ("FMAP") as authorized by Section 6008 of the Coronavirus Response

Act, while permitting and requiring state to eliminate or reduce the amount, duration and scope

of services available to individuals enrolled in Medicaid on or after March 18, 2020, even where

neither of the two statutory exceptions applies, was unlawful, arbitrary, and capricious and

should be set aside. Am. Compl., ¶¶ 155-158.

Certification of classes in this type of case is not only common but is almost without

exception. Civil rights cases such as this one were the driving force behind the creation of the

class action mechanism, which provided the ability to address situations where the government is

acting in a way to deny rights under federal law to groups of individuals. The drafters of Rule 23

recognized that it is more efficient—and sometimes the only possible way—to have a few

individuals bring claims on behalf of a wider group. Cases regarding public health insurance

benefits—which are at issue here—have routinely resulted in courts, including those in this

District, certifying statewide or national classes.[2] Therefore, this case is appropriate for class

treatment.

---

[2] *See e.g.*, *Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022)(upholding national class of Medicare recipients unlawfully billed after being admitted to hospitals on "observation status"); *Sherman v. Burwell*, No. 3:15-CV-01468 (JAM), 2016 WL 4197575 (D. Conn. Aug.8, 2016)(nationwide class certified in due process challenge to the lower levels of Medicare's administrative appeal system); *Exley v. Burwell*, No. 3:14-CV-1230-JAM, 2015 WL 3649632 (D. Conn. June 10, 2015)(nationwide class certified in challenge to delays in providing ALJ hearings in Medicare appeals); *Landers v. Leavitt*, 232 F.R.D. 42 (D. Conn. 2005) (nationwide class certified in challenge to Medicare condition of coverage); *Wilson-Coker v. Shalala*, No. 3:00 C 1312 (CFD), 2001 WL 930770 (D. Conn. Aug. 10, 2021)(statewide class certified in case involving Medicare beneficiaries who are also eligible for Medicaid); *Karen L., ex rel. Jane L. v. Physicians Health Services*, 202 F.R.D. 94 (D. Conn. 2001)(certifying statewide class of Medicaid enrollees seeking relief against violations of due process in Medicaid managed care); *Conn. State Dep't. of Social Services v. Shalala*, No. 3:99 CV 2020 SRU, 2000 WL 436616 (D.Conn. Feb. 28, 2000)(statewide class certified in another case involving Medicare beneficiaries who are also eligible for Medicaid); *Ladd v. Thomas*, 962 F. Supp. 284 (D. Conn 1997)(statewide class of Medicaid enrollees challenging due process procedures regarding claims for durable medical equipment); *Fox v. Bowen*, 656 F. Supp. 1236, 1238 n.2 (D. Conn. 1987)(statewide class certified in challenge to Secretary's application of Improvement Standard to Medicare beneficiaries).

Plaintiffs have submitted extensive evidence in support of their pending motion for class certification that demonstrates Defendant's common violations apply to the class as a whole, and that there is a common remedy that can be achieved through the issuance of a single injunction. This evidence includes: the Declarations of original named plaintiffs Deborah Carr, Brenda Moore, and Mary Ellen Wilson in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Plaintiffs' Mot. for TRO and PI") (ECF Dkts. ## 3-2, 3-3, and 3-4, respectively), the Declarations of new plaintiffs Mary Shaw, and Carol Katz in support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Class Certification Motion") and the exhibits attached thereto; the Declaration of Sheldon Toubman in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel ("2nd Toubman Decl."); the Declaration of Sheldon Toubman in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Toubman Decl.") (ECF Dkt. #3-5) and the attached exhibits; and the publicly available documents referenced in Plaintiffs' Amended Complaint, in the Memorandum of Law in Support of Plaintiffs' Mot. for TRO and PI (ECF Dkt. # 3-1),[3] and in this memorandum.

This evidence, combined with the great weight of authority in favor of certifying classes in cases like this, strongly support the Court's certification of the proposed class of:

> All individuals who were enrolled in Medicaid in any state or the District of Columbia on March 18, 2020 or later and had their Medicaid eligibility terminated or reduced to a lower level of benefits on or after November 6, 2020, or will have their Medicaid eligibility terminated or reduced to a lower level of benefits prior to a redetermination conducted after the end of the Public Health Emergency, for a reason other than moving out of the state or the District (including through death) or voluntarily disenrolling from benefits.

---

[3] In a further effort to avoid duplication and in the interest of judicial economy, plaintiffs rely on, and incorporate by reference, the Declarations of Deborah Carr, Brenda Moore, Mary Ellen Wilson, and Sheldon Toubman in Support of the Plaintiffs' Motion for TRO and PI to support their Class Certification Motion.

Am. Compl., ¶¶ 29-36.

## II.    STATEMENT OF FACTS

### A.    *Factual and Legal Background*

The factual and legal background of this case is set forth in detail in Plaintiffs' initial

Complaint (ECF Dkt. # 1) filed on August 3, 2022, Plaintiffs' Memorandum in Support of their

Mot. for a TRO and a PI and the supporting Declarations and attached exhibits filed therewith.

ECF Dkt. ##3-1 through 3-5. In the interests of judicial economy, those pleadings, memoranda,

and supporting declarations and exhibits are incorporated herein by reference. A brief summary

of the factual and legal background, as supplemented by the new plaintiffs' facts as set forth in

the Amended Complaint, is provided below.

On August 3, 2022 three of the Named Plaintiffs, Connecticut residents Ms. Carr, Ms.

Moore, and Ms. Wilson, filed their initial Complaint alleging that the elimination of their

Medicaid-funded medically necessary health services during the ongoing COVID-19 pandemic

violated the Coronavirus Response Act and the APA. Because they all were facing irreparable

harm as a result of the elimination of their crucial Medicaid benefits, they filed a motion for a

preliminary injunction ("PI"). In addition, because Ms. Carr and Ms. Moore were (and still are)

facing institutionalization as a result of these actions, they filed an accompanying motion for

temporary restraining order ("TRO"). *See* Plaintiffs' Motion for TRO and PI and supporting

Memorandum of Law (ECF Dkt. ## 3, 3-1); Carr Decl. (ECF Dkt. #3-5); Moore Decl. (ECF Dkt.

## 3-2-4); and Toubman Decl. (ECF Dkt. #3-5).

On August 8, 2022, the Court held a telephonic status conference in this matter to discuss

Plaintiffs' Motion for a TRO and PI. During the telephone call the Defendant agreed to suspend

enforcement of the relevant portion of the IFR with respect to Ms. Carr and Ms. Moore until the

Court ruled on their Motion for a PI and, if they did not prevail, the suspension would be lifted

15 days after such a decision from the Court. This commitment was confirmed in a filing by Defendant that same day. ECF Dkt. #20. The Court set a hearing date for the Motion for PI for September 27 and 28, 2022. ECF Dkt. # 19.

On August 26, 2022, Plaintiffs filed an Amended Class Action Complaint adding plaintiffs from the states of Nebraska and Delaware and information about the impact of Defendant's policies and actions in those states as well as the impact to class members residing in Pennsylvania. They now file this accompanying Class Certification Motion and Supporting Memorandum of Law seeking the certification of a nationwide class of hundreds of thousands of individuals similarly situated to the Named Plaintiffs.

B.    *The Amended Complaint*

Deborah Carr, Brenda Moore, Mary Ellen Wilson, Mary Shaw, and Carol Katz (collectively, the "Named Plaintiffs") have filed a national class action complaint seeking declaratory and injunctive relief to vacate the unlawful portions of the IFR and declare the states' obligations to continue to provide the same level of benefits to Medicaid beneficiaries for the duration of the PHE absent the applicability of one of two Coronavirus Response Act statutory exceptions. The Named Plaintiffs seek relief on behalf of themselves and those similarly-situated who were enrolled in Medicaid in any state or the District of Columbia on March 18, 2020 or later, and had their Medicaid eligibility terminated or reduced to a lower level of benefits on or after November 6, 2020, or will have their Medicaid eligibility terminated or reduced to a lower level of benefits prior to a redetermination conducted after the end of the PHE, for a reason other than moving out of the state or the District (including through death) or voluntarily disenrolling from benefits. Am. Compl. ¶ 29.

Because Defendant failed to comply with the APA, the Named Plaintiffs and the members of the class have been or will be unlawfully cut off from Medicaid coverage.

In Pennsylvania, the Medicaid agency responded to the IFR by promptly issuing new written guidance on December 7, 2020 instructing that individuals who fall under the new exceptions should be terminated from their full benefit Medicaid coverage, including individuals who qualify for Medicare and a Medicare Savings Program. Pennsylvania Dep't of Human Servs., OPERATIONS MEMORANDUM #20-12-03 (Dec. 7, 2020) *available at* ckkmxpj3u4ra4tju81slwamxn-exceptions-to-maintaining-ma-including-ltc-and-hcbs-enrollment-during-covid19.pdf (phlp.org). The guidance has been updated several times since then, most recently on July 26, 2022.

OPS-20-12-03 Exceptions to Maintaining Medical Assistance ...

https://www.dhs.pa.gov › OIM PCs and Ops Memos

Am. Compl. ¶ 109.

In Delaware, the Medicaid agency also changed its position on March 1, 2021, from compliance with the Coronavirus Response Act to implementation of the new exceptions in the IFR. See https://dhss.delaware.gov/dhss/dmma/files/an_202106.pdf; *see also* Am. Compl., ¶ 113.

This systemic failure constitutes a standardized course of conduct that results in common injury to all members of the class.

C.    *Defendant's Actions that Harm Members of the Class*

As set forth in the Amended Complaint and the Declarations of Carr, Moore, Wilson, Shaw, Katz and Toubman, and the exhibits attached thereto, Defendant continues to enforce the portion of the IFR that: (1) is contrary to the Section 6008 of the Coronavirus Response Act; and (2) was promulgated without following the notice and comment procedures required by the APA and, in the case of the portion promulgating 42 C.F.R. § 433.400, without the statutorily-required showing that eliminating the opportunity for prior notice and comment was "impractical, unnecessary or contrary to the public interest," 5 U.S.C. § 553(b)(B). Consequently, absent

declaratory and injunctive relief from the Court enjoining Defendant from application of that

portion of the IFR, the termination or reduction of Medicaid coverage to the Named Plaintiffs

and proposed plaintiff class will continue until the end of the PHE. In turn, the Named Plaintiffs

and putative class members will be at risk of institutionalization and/or other irreparable harm

due to the lack of access to the necessary health services. Am. Compl. ¶¶ 55, 111, 148.

There are hundreds of thousands of putative class members. In Connecticut alone, the

number of people cut-off of full-benefit Medicaid solely for the reason of qualifying for

Medicare and a Medicare Savings Program is at least 6,600 [4] just at the initial implementation of

42 C.F.R. § 433.400(c)(2)(1)(B). 2nd Toubman Decl,¶ 6; Am. Compl. ¶¶ 30, 112. This does not

count individuals cut off for other reasons authorized and required under the IFR codified in 42

C.F.R. § 433.400, such as having legal status in this country for less than five years and no

longer being pregnant or under 21, being deemed not to have been validly enrolled in Medicaid

for some reason, or being moved from one MSP to another one with lower benefits. It also does

not include the individuals who are being newly cut of each month because of newly falling

under one of these exceptions. *See* Am. Compl. ¶ 30. Since all states participate in Medicaid, the

IFR applies to all states and the District of Columbia, and Connecticut has only about 1% of the

population of the United States (3.57 million of about 329.5 million), Plaintiffs estimate a class

of hundreds of thousands individuals nationwide. *Id*. Joinder is also impracticable because the

class is dynamic and because the absent class members lack the knowledge, sophistication, and

financial means to maintain individual actions.

D.    *The Named Plaintiffs*

---

[4] The record will be supplemented with updated data. *See* 2nd Toubman Decl., ¶ 12.

Each of the Named Plaintiffs has been notified that their full benefit or other Medicaid coverage has terminated because: (1) they no longer meet the eligibility criteria for that coverage, and (2) they qualify for an MSP providing limited financial assistance, which, under the IFR, ends their entitlement to continued enrollment in full-benefit Medicaid or qualify only for a lower level of Medicare Savings Program (MSP)[5] than the MSP program they were on, also per the IFR. Am. Compl., ¶¶ 114-147.

1.    Deborah Carr

Plaintiff Deborah Carr is a 63-year-old white woman who lives in her own home in New Haven, Connecticut. Declaration of Deborah Carr in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Carr Decl.")(ECF Dkt. # 3-2) ¶ 2. She has been on full-benefit Medicaid her entire life due to long term, chronic conditions. *Id*. ¶ 5. Ms. Carr needs daily assistance in her home due to her progressive neurological condition, Freidrich's Ataxia. *Id*. ¶¶ 3, 6. She needs help with dressing and bathing, in using the toilet, transferring from her wheelchair or out of bed, and with eating food. *Id*. ¶ 6. She has for years been receiving many hours per week of home health services paid for under the Medicaid program to help her with her activities of daily living and allow her to continue to live outside of an institutional setting. *Id*. ¶ 7.Ms. Carr has income of $1300/month; she cannot afford to pay for these services that cost several thousand dollars/month. *Id*. ¶¶ 4, 21.

Following issuance of the IFR and Defendant's declaration to all states that the IFR's newly created exceptions to maintenance of effort under the Coronavirus Response Act were mandatory, Connecticut terminated Plaintiff Carr's full benefit Medicaid under HUSKY D,

---

[5] Medicare Savings Programs are limited benefit Medicaid programs required in all states by federal Medicaid law. They cover Medicare Part B premiums and, in the case of the Qualified Medicare Beneficiary program only, cost-sharing under Medicare (deductibles, copays and co-insurance).

based on that mandate, per a Feb. 15, 2022 notice. *Id*. ¶ 11. Ms. Carr timely challenged the termination of her Medicaid coverage through the administrative appeal process. *Id*. ¶ 17. During that appeal her personal care benefits of about 70 hours per week have continued pending the decision by the hearing officer**,** which could be issued at any time. *Id*. ¶ 20.  If unsuccessful, she will be subject to repayment to the state of the cost of her care provided by the Medicaid program. 42 C.F.R. § 431.230(b). Once such a decision is issued, her continued benefits will cease and she will be forced to move to a nursing home.  Carr Decl. ¶ 22.

   2.    Brenda Moore

Plaintiff Brenda Moore is a 57-year-old Black woman who lives in her own home with her adult son and three year-old grandchild in New Haven, Connecticut. Declaration of Brenda Moore in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Moore Decl.") (ECF Dkt. #3-3) ¶¶ 2-3. Ms. Moore's son works full time out of the house and is unavailable to provide the daily care she requires. *Id*. ¶ 3. Ms. Moore has a severe vascular condition which has led to blood clots and required multiple surgeries which have been only partially successful. *Id*. ¶ 4. Due to her severe circulation issues, she requires daily assistance with bathing, dressing, transferring and toileting, and with meal preparation. *Id*. ¶ 5. She also has a significant risk of falling and has fallen several times. *Id*. ¶ 6. She is able to ambulate but only with a walker or cane. *Id*. Ms. Moore also has severe depression and Post-Traumatic Stress Disorder. *Id*. ¶7. Ms. Moore's entire income is $1402 in monthly Social Security Disability Insurance benefits, so she is unable to pay for the needed assistance herself. *Id*. ¶¶ 8, 17-18.

Ms. Moore had been receiving Medicaid-funded daily assistance from personal care attendants starting in July of 2020, due to her developing vascular condition which was causing falls and other symptoms. *Id*. ¶ 12. The personal care services paid for under the Medicaid

9

program, currently totaling 39 hours per week, allow her to live outside of an institutional

setting. *Id*. ¶ 13. Following issuance of the IFR and Defendant's declaration to all states that the

IFR's newly created exceptions to maintenance of effort under the Coronavirus Response Act

were mandatory, Connecticut terminated Ms. Moore's full benefit Medicaid under HUSKY D

effective March 1, 2022, per a February 15, 2022, notice of termination, based on that mandate.

*Id*. ¶ 14.

Ms. Moore has accrued extensive debt for services rendered during a period where her

home health aide worked but was not paid, because of the termination of full-scope Medicaid

(under HUSKY D), as required by Defendant under the IFR. *Id*., ¶17. She was able to meet

Medicaid "spend down" for an alternative full-benefit Medicaid program, based on the

application of this debt, which allowed her to continue coverage for a limited one-time six-month

period ending on *August 31, 2022. Id*., ¶ 19. She will be unable to accrue such a large debt a

second time, so payment for her personal care attendant will abruptly end that day and she will

be forced to move to a nursing facility. *Id*., ¶¶ 19-21, 30.

       3.    <u>Mary Ellen Wilson</u>

Plaintiff Wilson is a 62-year-old white woman who lives at home in Stamford,

Connecticut. Declaration of Mary Ellen Wilson in Support of Plaintiffs' Motion for Preliminary

Injunction and Temporary Restraining Order ("Wilson Decl.") (ECF Dkt. # 3- 4) ¶ 2. She had

seizures as a child and adult, surgery related to this, and has Multiple Sclerosis (MS) and dental

complications related to decades of anti-seizure medication usage. *Id*. ¶¶ 3-4. Her income is

$1391/ month. *Id*. ¶ 9. Ms. Wilson was terminated from full benefit Medicaid under the HUSKY

D program also on the basis she is on Medicare and an MSP. *Id*. ¶¶ 13-14, 17-18. As a result, she

has lost many benefits covered only by the Medicaid program. For example, dental work is not

covered by Medicare, other than cleanings covered by her Medicare Advantage plan; dental

10

coverage under Medicaid is far more comprehensive. *Id*. ¶ 19. She has paid for cabs to get to medical appointments even though Medicaid pays for this transportation. *Id*. ¶ 20. Multiple Sclerosis is a generally degenerative neurological disease, and so Ms. Wilson's course is uncertain and she could need additional services not covered under Medicare at any time (e.g., home care services, durable medical equipment not covered under Medicare, etc.). *Id*. ¶ 7.

Following issuance of the IFR and Defendant's clarification to all states that the IFR's newly created exceptions to maintenance of effort under the Coronavirus Response Act were mandatory, Connecticut terminated Ms. Wilson's full benefit Medicaid under HUSKY D, based on that mandate. *Id*. ¶¶ 14, 17-18. She appealed but lost her appeal based on § 433.400.

4.    <u>Mary Shaw</u>

Mary Shaw is a 65-year-old white woman who is a resident of Norfolk, Nebraska, and whose entire income is $1,252 per month in Social Security benefits. She first qualified for Medicaid in October of 2020, having applied for coverage under the new Medicaid expansion program in Nebraska in August of that year. Shaw Decl., ¶¶ 2, 3, 4, 5.

This new coverage allowed her to go to the dentist for the first time in years. She was also able to see several doctors for a hip replacement surgery, which she needed because she could no longer walk. Afterwards, the new coverage allowed her to have physical therapy, which finally allowed her to walk again. *Id*., ¶¶ 6,7.

Ms. Shaw was diagnosed with cancer about four years ago, when she did not have insurance. This required removal of part of her nose, where the cancer, squamous cell carcinoma, was found. She still owes thousands of dollars for this treatment. *Id*., ¶ 8 In December 2021, she received another diagnosis of squamous cell carcinoma, this time on her right shoulder.  *Id*., ¶ 10.

Ms. Shaw first qualified for Medicare in January of 2022 when she turned 65. In December of 2021, she received a notice from the Nebraska Medicaid agency dated December

11

13, 2021 stating that her Medicaid would be terminated on January 1, 2022. *Id.*,¶¶11,12 Exh. 2. The notice said that she qualified for payment of her Medicare Part B premiums on January 1, 2022, and that her Medicaid coverage was being closed for the reason that she was "ineligible" and her "Allowable Income Changed," meaning that she no longer qualified for the Nebraska Medicaid expansion program and only qualified for the aged, blind, and disabled Medicaid program in Nebraska, which has a lower income limit which is below her monthly income. *See id.*

As a result of this termination of full-benefit Medicaid, Ms. Shaw has been billed for a copay for a biopsy which extended beyond January 1, 2022, the date of that termination, and she also owes $100 in copays for doctor visits for her condition of high blood pressure. *Id.*, ¶¶ 15, 18. Because she cannot afford to cover her copays, she has not gone to medical appointments since January 1, 2022 for her emphysema condition, and she did not go to the one-year post-replacement hip surgery checkup as recommended by her surgeon. *Id.*, ¶¶19, 20. A new lesion was recently discovered on her leg which may also be cancerous, and she does not know how she will pay for the cost-sharing for the medical appointments needed to diagnose and treat this new condition. *Id.* at ¶ 17.

Ms. Shaw also no longer has dental coverage so has not gone for dental visits since January 2, 2022, even though her surgeon and dentist both advised her that it is important to get regular dental care, because an infection in her mouth could spread to her artificial hip resulting in a serious infection, which could result in life-threatening septicemia or removal of the replacement hip. *Id.*, ¶ 22.

5.    <u>Carol Katz</u>

Carol Katz is a 73-year-old white woman who is a resident of Milford, Delaware. Her income is only $1154 per month in Social Security retirement benefits. Katz Decl., ¶¶ 2-4.  She

has severe rheumatoid arthritis (RA), a progressive contractual disease, as well as COPD, lung nodules, high blood pressure, fibromyalgia, a carotid artery occlusion which resulted in a stroke in 2013, cerebrovascular disease, dilation of the aorta, muscle weakness and anxiety disorder. *Id*., ¶¶ 5, 6.

Ms. Katz has been on the Delaware QMB program since about 2014, when she got on it to cover the high cost-sharing required for Medicare payment for the installation of the carotid artery stent needed to address her carotid artery occlusion which had resulted in the stroke. *Id*., ¶ 8. She qualified because her income was under 100% of the federal poverty level, *see* 16 Del. Admin Code 17300 *et seq*. For eight years, the QMB program covered all of her deductibles, co-pays and co-insurance for doctor visits, hospital and ER visits, of which she had many. The cost-sharing coverage under QMB included payment for all of the costs for the infusion treatments needed every four weeks to treat RA, for the last approximately four years. These infusion treatments were necessary to allow her to walk and to use her hands, by addressing the pain and debilitation in her joints and connective tissue caused by RA. *Id*., ¶¶ 9,10.

About four months ago, Ms. Katz's doctor changed her infusion schedule to every eight weeks, when the drug used to treat her RA was switched from Orencia to Simponi Aria. According to the office of her rheumatologist, the cost-sharing under Medicare for these treatments is $478 per treatment, which she cannot afford. *Id*., ¶ 11.

In March of 2022, she received a notice dated March 18. 2022 from the State of Delaware Division of Social Services stating that beginning April 1. 2022 she would be switched from the QMB program to SLMB, under which only her Part B premiums would be paid for and she would "not be eligible for any other health care services." *Id*., ¶ 12, Ex. 1. The notice said that "Your Family's income after allowable deductions is $1134.00. The allowable income limit for a

Family of 1 is $1133.00. Id.  You are over this limit."  After an unsuccessful appeal, she received another notice from the State of Delaware Division of Social Services dated July 14, 2022 stating that she was being switched from the QMB program to the SLMB program on August 1st. *Id*., ¶¶ 13, 14, Exhs. 2 and 3.

Ms. Katz no longer has any coverage for any of the cost-sharing under Medicare for all of her doctor or outpatient visits, of which she has about three per month.  This includes the 20% of the doctors' charges for office visits. *Id*., ¶ 15. The only reason she can continue going to her infusions every 8 weeks, for which the cost-sharing is $478 per time, is that her granddaughter managed to persuade the manufacturer of the Simponi Aria infusion to cover all of this through its Patient Assistance Foundation. *Id*., ¶ 16.

Because of her COPD condition, starting three years ago, Ms. Katz had to start going for a CAT scan of her chest as a lung cancer screening. *Id*., ¶ 17. In a CAT scan of her chest on April 11, 2022, Ms. Katz's doctor found seven nodules. As a result of this finding, Ms. Katz's pulmonologist wants her to do further tests to check for cancer in some of the nodules seen in the April CAT scan. *Id*., ¶ 18. She cannot, however, afford the cost-sharing involved. *Id*  With all of the cost-sharing responsibilities for her doctor visits which are not covered by Medicare, and which are no longer covered by the QMB program since she was cut off it as of August 1, 2022, Ms. Katz is very worried about not being able to see her doctors, including to check for possible cancer. *Id*., ¶ 19.

## III.   THE PROPOSED CLASS MEETS THE STANDARDS FOR CLASS CERTIFICATION UNDER rule 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A.    *The Proposed Class*

Plaintiffs seek to certify a nationwide class defined as follows:

> All individuals who were enrolled in Medicaid in any state or the District of Columbia on March 18, 2020 or later and had their Medicaid eligibility terminated or reduced to a lower level of benefits on or after November 6, 2020, or will have their Medicaid eligibility terminated or reduced to a lower level of benefits prior to a redetermination conducted after the end of the PHE, for a reason other than moving out of the state or the District (including through death) or voluntarily disenrolling from benefits.

Am. Compl., ¶ 29.

As noted above, Courts, including in this District, have routinely certified national and other class actions in public health benefits cases, including Medicaid cases. *See* n.2, above at 2. The propriety of class certification in cases like this is illustrated by the large number of class actions that have been certified against governmental agencies at both the state and federal levels. *See, e.g.*, 7 Newberg on Class Actions § 23:1 (4th ed. 2002). Because class members are very unlikely to be able to institute legal proceedings on their own behalf, class relief becomes even more important. Without the procedural benefits provided by the class action mechanism, the Named Plaintiffs and others similarly situated would be unable to effectively seek the relief to which they are entitled. For the reasons discussed below, this Court should find that the plaintiffs have met the requirements of Rule 23(a) and should certify a Rule 23(b)(2) class.

B.    *The Standards for Class Certification*

The party seeking certification must satisfy the "four threshold requirements" set out in Rue 23(a) and must also demonstrate that the action is maintainable under one of the subdivisions of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *see also, e.g., Comer v. Cisneros*, 37 F.3d 775, 796 (2nd Cir. 1994). Rule 23(a) has four distinct criteria: (1) the class must be so numerous that joinder of all members is impracticable; (2) the members of the class must share common questions of law *or* fact; (3) the claims or defenses of the named representatives must be typical of those of the class; and (4) the persons representing the class must be able to fairly and adequately represent the interests of the class. Fed. R. Civ. P.

15

23(a); *see also Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). In the Second Circuit, courts must also determine that the proposed class is ascertainable (identifiable). *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *see also discussion* below at 32-33.

Once all four elements of Rule 23(a) are established, a class action may be maintained if it satisfies at least one of the three subdivisions of Rule 23(b). *Shady Grove Orthopedic Associates P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). For purposes of this case, the relevant subpart is Rule 23(b)(2), which requires that the defendant act or refuse to act on grounds generally applicable to the class, therefore making declaratory or injunctive relief appropriate. In fact, the 1966 Notes to Rule 23(b)(2), state "civil rights actions where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration' as examples of appropriate Rule 23(b)(2) actions." FED. R. CIV. P. 23(b)(2) 1966 Advisory Committee's Note; *see also Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001) ("Rule 23(b)(2) certification is 'especially appropriate where a plaintiff seeks injunctive relief against discriminatory practices by a defendant.'").

Medicaid cases customarily focus on the standardized conduct of the defendant and do not depend on individualized determinations of either liability or remedy. In post-*Wal-Mart, Inc. v. Dukes*[6] Medicaid cases, courts have certified classes, re-certified classes, or refused to decertify classes. *See e.g.*, *Guadagna v. Zucker*, 332 F.R.D. 86 (E.D.N.Y. 2019) (class of Medicaid and Medicare recipients challenging reduction in healthcare benefits without prior notice or opportunity for hearing); *Menking ex. rel. Menking v. Daines*, 287 F.R.D. 174

---

[6] 564 U.S. 338 (2011).

(S.D.N.Y. 2012) (certifying a statewide class of Medicaid applicants and recipients who requested fair hearing requests but did not receive a timely hearing decision); *Oster v. Lightbourne*, No. C 09-4668 CW, 2012 WL 685808, at *6 (N.D. Cal. Mar. 2, 2012) (certifying a class of persons whose services will be "limited, cut, or terminated" under California's home-care program, in violation of the ADA, the Rehabilitation Act, and the Medicaid Act); *Pashby v. Cansler,* 279 F.R.D. 347, 356 (E.D.N.C. 2011) (same); *Gray v. Golden Gate Nat'l Recreational Area,* 866 F. Supp. 2d 1129, 1142 (N.D. Cal. 2011) (denying request to decertify class based upon the Ninth Circuit's decision in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)).[7]

Courts have routinely certified Medicaid classes precisely because they raise a common question susceptible to a common solution through a single injunction. This includes the certification of nationwide classes of Medicaid enrollees where a federal rule or policy applied across the country even though the Medicaid program is administered in the state level. *See, e.g.*, *Thompson v. Raiford*, No. 3:92–CV–1539–R, 1993 WL 497232 (N.D. Tex. Sept. 24, 1993) situ1984) (Medicaid "pickle amendment" case with a nationwide class), *see also Situ v. Leavitt*, 240 F.R.D. 551 (N.D. Cal. 2007) (nationwide class of dually eligible Medicare/Medicaid

---

[7] Courts have also continued to certify classes in a variety of civil rights and other contexts, and refused to de-certify existing classes after *Wal-Mart. See Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022) (upholding national class of Medicare recipients unlawfully billed after being admitted to hospitals on "observation status"); *Morrow v. Washington*, 277 F.R.D. 172, 192-94 (E.D. Tex. 2011) (certifying a class of motorists who alleged they had been targeted by police because they were members of racial or ethnic minority groups)*; Connor B. ex. rel. Vigurs v. Patrick*, 278 F.R.D. 30, 31 (D. Mass. 2011) (following the *Wal-Mart* decision, court declined to de-certify class of foster children harmed by systemic deficiencies in state's foster care system); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011) (unlike *Wal-Mart*, injury results from a common core of salient facts); *In re Ferrero Litig.*, 278 F.R.D. 552, 558 (S.D. Cal. 2011) (plaintiffs need not prove a common class-wide injury at class certification stage; rather, they need only to demonstrate that there is a common contention that is capable of class wide resolution); *Montanez v. Gerber Childrenswear, LLC*, No. CV 09-7420 DSF, 2011 WL 6757875, at *3 (C.D. Cal. Dec. 15, 2011) (unlike *Wal-Mart*, there is common control over the challenged practice); *Parkinson v. Freedom Fidelity Mgmt., Inc.,* No. CV-10-345-RHW, 2012 WL 72820, at *4 (E.D. Wash. Jan. 10, 2012) (certifying class for violations of state Consumer Protection Act and Debt Adjusting Statute, although plaintiffs suffered different statutory violations in different ways by different debt collectors); *Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, 2012 WL 90101, at *7 (W.D. Wash. Jan. 10, 2012) (commonality only requires a single question of law or fact).

enrollees).  Like those cases, the Complaint here seeks a single injunction that would set aside

the portion of the IFR codified in 42 C.F.R. § 433.400 eliminating the full-Medicaid benefit to

beneficiaries under Section 6008 of the FFCRA. Thus, the Court can, "in a single stroke," ensure

that the Plaintiffs and class members are not subject to unlawful termination of their full

Medicaid benefits prior to the end of the PHE. *See Wal-Mart*, 564 U.S. at 360.

        *C.*     *The Plaintiffs Have Presented Sufficient Evidence to Support Their Motion.*

Well before *Wal-Mart*, courts were required to conduct a "rigorous analysis" of the

evidence submitted in support of a class certification motion. *See Gen. Tel. Co. of Sw. v. Falcon,*

457 U.S. 157, 160 (1982) ("[S]*ometimes* it may be necessary for the court to probe behind the

pleadings before coming to rest on the certification question.")(emphasis added). That test, and

the quantum of evidence needed to satisfy that test, has not been enlarged nor made more

demanding by *Wal-Mart.* 564 U.S. at 350-351. Rather, the Supreme Court in *Wal-Mart* affirmed

*Falcon's* understanding that "*sometimes* it may be necessary for the court to probe behind the

pleadings before coming to rest on the certification question." *Wal-Mart*, 564 U.S. at 350*.*

(quoting *Falcon*, 457 U.S. at 160 (emphasis added)).

However, clarifying and applying its decision in *Wal-Mart*, the Supreme Court rejected

the argument that a court must demand affirmative proof from the plaintiffs concerning the

merits of their claims set forth in their complaint. *Amgen Inc., v. Conn. Ret. Plans & Tr. Funds*,

568 U.S. 455, 465-66 (2013). Speaking for the Court, Justice Ginsburg declared that:

> Although we have cautioned that a court's class-certification analysis must be
> "rigorous" and may "entail some overlap with the merits of the plaintiff's
> underlying claim," *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ——, —— (2011)
> (slip op., at 10) (internal quotation marks omitted), Rule 23 grants courts no license
> to engage in free-ranging merits inquiries at the certification stage. Merits questions
> may be considered to the extent—but only to the extent—that they are relevant to
> determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc.*, 568 U.S. at 465-66. Establishing class requirements, including commonality, does not require a "mini trial" on the merits to determine the answers to the common questions, *id*. at 477, even after *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Thus, the rigorous analysis required at the class certification stage can and should be conducted based upon allegations in the complaint, supplemented by available and preliminary evidence of those allegations, so that the class determination does not devolve into a preliminary trial of the entire case.

The Court here has a considerable quantum and scope of evidence before it, which is more than sufficient to allow it to undertake a "rigorous analysis" of the relevant facts, claims, and defenses. Since *Wal-Mart* has not altered *Falcon's* longstanding requirement concerning the evidence needed to certify a class, nor the scope of analysis that the Court must conduct to evaluate that evidence, the Plaintiffs' Complaint, exhibits, documents, reports, records, declarations concerning the status of the Named Plaintiffs, and relevant publicly available and other data and documents supplied to the Court by the Plaintiffs, are plainly sufficient for the Court to perform its task and certify a class in this case. Specifically, as more fully described below, the data from Connecticut on the number of individuals affected by Defendant's implementation of the IFR promulgating 42 C.F.R. § 433.400 to terminate their eligibility for Medicaid and the extrapolation of that data nationwide, where the IFR is fully in effect, proves numerosity; and the facts in the Amended Complaint plus the declarations filed in support Plaintiff's Class Certification Motion illustrate commonality, typicality, and adequacy of the Named Plaintiffs as representatives of the class.

Finally, the declaratory and injunctive relief that Plaintiffs seek can be ordered through a single injunction that can provide relief to the Class as a whole. Specifically, the Plaintiffs seek an order from this Court: 1) declaring that Defendant's issuance of 42 C.F.R. § 433.400 through

the IFR violates the APA and the Coronavirus Response Act, and 2) finding that Defendant's

implementation of the enhanced FMAP authorized by Section 6008 of the Coronavirus Response

Act while permitting and requiring states to eliminate benefits or reduce the amount, duration,

and scope of services available to individuals enrolled in Medicaid on or after March 18, 2020,

even where neither of the two statutory exceptions applies, was unlawful, arbitrary, and

capricious and should be set aside. Am. Compl. Request for Relief, ¶¶ A, B, and C.

      D.     *The Proposed Class Meets all of the Requirements for Class Certification*

As discussed in detail below, the Proposed Class meets the requirements for certification

under Fed. R. Civ. P. 23(a) and (b)(2) as well as the Second Circuit's additional implied

requirement that the class be ascertainable.

      1.    <u>The Proposed Class Meets the Requirements of Rule 23(a).</u>

      a.    *The Class is So Numerous that Joinder of All Members Is Impractical.*

Rule 23(a)(1) of the Federal Rules of Civil Procedure has two components: assessing the

number of class members and evaluating the practicability of joining them individually in the

case. *See e.g., Robidoux*, 987 F.2d at 935; *see also, e.g.*, 7A Wright, Miller & Kane, Federal

Practice and Procedure § 1762, at 171 (3d ed. 2005). Its resolution depends

> on all the circumstances surrounding a case, not on mere numbers . . . Relevant
> considerations include judicial economy arising from the avoidance of a
> multiplicity of actions, geographic dispersion of class members, financial resources
> of class members, the ability of claimants to institute individual suits, and request
> for prospective injunctive relief which would involve future class members.

*Robidoux,* 987 F.2d at 936 ("the determination of practicality depends on all of the circumstances

surrounding the case, not on mere numbers."). For the purpose of satisfying the first component,

the plaintiffs need not establish the precise number or identity of class members. *Id*. at 935

(plaintiffs need not present "evidence of exact class size or identity of class members to satisfy

the numerosity requirement."). This is particularly true where only declaratory and injunctive relief is sought.

Furthermore, in civil rights cases, the membership of a class is often "incapable of specific enumeration." *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972), *abrogated on other grounds* 437 U.S. 478 (1978). Thus, in such cases, as in the present matter, a class action may proceed if the plaintiffs "demonstrate some evidence or reasonable estimate of the number of purported class members." *Tiro v. Public House Inv.*, *LLC*, 288 F.R.D. 272, 278 (S.D.N.Y. 2012) (citing *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)); *see also Carr v. Wilson-Coker*, 203 F.R.D. 66 (D. Conn. 2001) quoting 5 Newberg on Class Actions § 23.2 ("Courts generally have not required detailed proof of class numerousness in government benefit class actions when challenged statutes or regulations are of general applicability to a class of recipients, because those classes are often inherently very large."). In doing so, plaintiffs may "rely on reasonable inferences drawn from the available facts." *State of Conn. Office of Protection & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 287 (D. Conn. 2010) (citation omitted); *see also Raymond v. Rowland*, 220 F.R.D. 173, 178 (D. Conn. 2004) ("[C]ourts may make common sense assumptions to support findings of numerosity.") (citation omitted).

Here, as explained in Section II.C., above at p. 6, it is estimated that there are hundreds of thousands class members throughout the United States. This estimate is based upon a reasonable and commonsense extrapolation of data and information obtained from Connecticut regarding the number of individuals who, like the Plaintiffs, have or will have their Medicaid benefits terminated as a result of the Defendant's adoption and implementation of 42 C.F.R. § 433.400 through the IFR, nationwide. *See* Am. Compl., ¶ 30.

21

Further, a proposed class which consists of hundreds of thousands of members throughout the United States—with at least 6600 class members in Connecticut alone just from initial implementation of one of the exceptions —is sufficiently numerous to make joinder impracticable. Frequently, proposed classes consisting of smaller numbers are certified under Rule 23(a)(1) because joinder would be impractical. *See* 2nd Toubman Decl.,¶ 6.  In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also, e.g., Manker v. Spencer*, 329 F.R.D. 110, 117 (D. Conn. 2018) (same) (quoting *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanely & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014); *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 78 (D. Conn. 2014) (same).

While the sheer size of this class clearly makes joinder impracticable, other factors—such as the geographic distribution of the plaintiffs, the ability of the plaintiffs to bring their own separate actions, and the type of relief sought—support a finding that joinder is impracticable. *Robidoux,* 987 F.2d at 936. Here, the combined impact of class members' poverty, age, disabilities, and/or medical conditions, and their distribution throughout the United States, severely limits their access to attorneys and their resulting ability to bring individual actions for declaratory or injunctive relief, making class certification particularly appropriate. Am. Compl. ¶ 30.

Finally, joinder is impracticable in the instant case because the class includes not only current individuals who have been unlawfully terminated from Medicaid in violation of the Coronavirus Response Act, but also includes individuals who will be similarly situated *in the future*, whose identity cannot be presently determined. *Id.* ¶ 29. For the above reasons, the proposed class readily satisfies the numerosity requirement of Rule 23(a)(1).

                    *b.*       *The Members of the Class Share Common Questions of Law and Fact.*

In order for a class to be certified, Rule 23(a)(2) requires that the proposed class members have at least *one* factual *or* legal issue in common, the resolution of which will affect all or a significant number of putative class members. *See, e.g.*, *Exley v. Burwell*, No. 3:14-CV-1230-JAM, 2015 WL 3649632, at *5 (D. Conn. June 10, 2015); *Haddock v. Nationwide Fin. Services*, 293 F.R.D. 272, 279-80 (D. Conn. 2013); *Morrison v. Ocean State Jobbers, Inc*., 290 F.R.D. 347, 353-54 (D. Conn. 2013); *Linsely v. FMS Inv.  Corp.*, 288 F.R.D. 11, 15 (D. Conn. 2013); *Amara v. Cigna Corp.*, 925 F. Supp. 2d 242, 261-62 (D. Conn. 2012), *aff'd* 775 F.3d 510 (2d Cir. 2014); *Maziarz v. Hous. Auth. of the Town of Vernon*, 281 F.R.D. 71, 81-82 (D. Conn. 2012).

Pursuant to *Wal-Mart*'s invigorated commonality standard, Plaintiffs must show that their claims depend upon a "common contention  . . . of such a nature that it is capable of class wide resolution . . . ." 564 U.S. at 350. As shown below, after *Wal-Mart*, courts have continued to certify classes, particularly in civil rights cases seeking injunctive relief, including cases involving Medicaid recipients, when a governmental entity's common practice or policy impacts the whole class.

Class actions are particularly appropriate where, as here, governmental policies and practices have a broad impact upon a class of recipients, and the scope of the relief is dictated by the nature of the violation. *See Wal-Mart*, 564 U.S. at 361 ("[T]he Rule reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order."); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.").

There is no requirement that "all questions of law and fact involved in the dispute be common to all members of the class." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448-49 (N.D. Cal. 1994). Only a single common question, of law or fact, is required to satisfy the commonality standard. *Wal-Mart*, 564 U.S. at 359. Nor does Rule 23(a)(2) require all putative class members to share identical claims; rather, the Rule requires only "that complainants' claims be common and not in conflict." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988). Only where there are *no* common questions of fact or law should certification be denied. *Yaffe*, 454 F.2d at 1366.

Similarly, the requirement that there be a substantial question of law or fact common to all class members does not mean that each class member must be identically situated. Commonality is not defeated by the presence of individual differences among class members. *Marisol A.*, 126 F.2d at 377 (differences in children's individual circumstances in class action challenging child welfare system did not compromise commonality); *Conn. Office of Protection and Advocacy for Persons with Disabilities*, 706 F. Supp. 2d at 287 ("Minor factual 'differences will not preclude class certification if there is a common question of law."); *Lightbourn v. County of El Paso*, 118 F.3d, 421, 426 (5th Cir. 1997) (class of individuals with different disabilities requiring different accommodations was certified because all were impacted by the same governmental inaction); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) ("The similarity of the legal theories shared by the plaintiffs and the class at large is so strong as to override whatever factual differences might exist and dictate a determination that the named plaintiffs' claims are typical of those of the members of the putative class."), *disapproved of on other grounds* 474 U.S. 64 (1985).

Courts have broadly applied Rule 23 to class actions seeking injunctive and declaratory relief to remedy the denial of a legal entitlement or the application of a governmental policy or practice that infringes that right. *See Morrow*, 277 F.R.D. at 193 (plaintiffs offered significant proof that police department operated a general policy of discrimination in conducting traffic stops); *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 193 (W.D. Tex. 1998) ("Given that the class members are affected by the general policy and that policy is the focus of this litigation, the Court finds the commonality requirement has been satisfied."); *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998) ("Commonality is easily established in cases seeking injunctive relief.").

In this case, there are several questions of law and fact that are common to all class members, including, *inter alia*:

a. Whether Defendant violated the APA by promulgating the portion of the IFR codified in 42 C.F.R. § 433.400 without providing advance notice and opportunity for comment as required under 5 U.S.C. § 553.

b. Whether Defendant violated the APA by promulgating the portion of the IFR codified in 42 C.F.R. § 433.400 and making it immediately effective rather than 30 days following publication as required under 5 U.S.C. § 553.

c. Whether Defendant had any authority or good cause for disregarding the APA's procedural rulemaking requirements in disregarding these advance notice and comment requirements, pursuant to 5 U.S.C. § 553(b)(B).

d. Whether the portion of the IFR codified in 42 C.F.R. § 433.400 is inconsistent with Section 6008 of the Coronavirus Response Act.

e. Whether by adopting exceptions to the continuous enrollment requirements of the Coronavirus Response Act which are not authorized by the Act itself and where Congress specified only two narrow exceptions, the Defendant violated the APA in that the IFR was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

f. Whether the Defendant also violated the APA by reversing its contemporaneous interpretation of the Coronavirus Response Act which it maintained for eight months,

25

without considering the reliance interests of parties based on the statute and its original interpretation of same.

g. Whether it was in the "best interests of Medicaid beneficiaries" to terminate or substantially reduce their Medicaid benefits during the pandemic and the declared PHE, as claimed by Defendant.

Am. Compl. ¶ 31(a-g). All of these common questions of law and fact focus exclusively on the Defendant's conduct and are not dependent upon the individual ages, medical conditions and/or disabilities, geographic location, or other similar individual factors of the Named Plaintiffs or members of the proposed class. Therefore, the resolution of these claims does not require an inquiry into individualized circumstances. Instead, it requires the Court to determine whether Defendant's implementation of the enhanced FMAP authorized by Section 6008 of the Coronavirus Response Act, while permitting and requiring states to eliminate benefits or reduce the amount, duration, and scope of services available to individuals enrolled in Medicaid on or after March 18, 2020, even where neither of the two statutory exceptions applies, was unlawful, arbitrary, and capricious and should be set aside.

Additionally, in this action, the Class seeks injunctive and declaratory relief. See Am. Compl. ¶ 18, Request for Relief, ¶¶ A-E. The Class here has demonstrated the common thread or "glue" which unites their common factual and legal claims: all members of the plaintiff class are or will be subject to termination or reduction of their Medicaid benefits due to Defendant's application of the IFR codified in 42 C.F.R. § 433.400, in violation of the APA. As a result, the Class is suffering because of a common course of conduct by Defendant, from which arises a set of common claims and contentions.

All plaintiffs seek the same relief—enjoining and setting aside the relevant portion of the IFR—regardless which particular extra-statutory exception created in the IFR affects them. No individualized relief is sought or needed.

Defendant's application of 42 C.F.R. § 433.400 of the IFR in contradiction to Section 6008 of the Coronavirus Response Act and in violation of the APA leads logically and ineluctably to an injunction which would, in a single stroke, address the claims of and harms suffered by each class member. As long as the district court is not involved in individualized determinations of liability and remedy and can issue a single injunction that can remedy the structural deficiency, as is the case here, class certification is warranted.

As a direct result of Defendant's actions and inactions, Plaintiffs and members of the putative class have lost, or will in the future lose, or have had or will have reduced, the amount, duration and scope of their Medicaid benefits authorized by Section 6008 of the Coronavirus Response Act in violation of the APA. This standardized conduct is the common problem that is susceptible to a common answer: an injunction setting aside the portion of the IFR codified in 42 C.F.R. § 433.400.

In short, the Named Plaintiffs have established commonality precisely because they identify a common contention—that Defendant violated the APA when he implemented the portion of the IFR codified in 42 C.F.R. § 433.400 permitting and requiring states to eliminate benefits or reduce the amount, duration, and scope of services available to individuals enrolled in Medicaid on or after March 18, 2020, even where neither of the two statutory exceptions apply, counter to the requirements of the enhanced FMAP authorized by Section 6008 of the Coronavirus Response Act and which each state and the District of Columbia readily accepted.

The common contention, moreover, is "of such a nature that it is capable of class wide resolution . . . ." *Wal-Mart*, 564 U.S. at 350. Here, the challenge is directed to Defendant's unlawful actions and inactions. This failure is the common contention that is susceptible to a common answer, through a single injunction that would require Defendant to remedy this

deficiency and would provide relief to the class as a whole. *Id.* at 365. Therefore, Plaintiffs have

presented both the common questions and the "common *answers* apt to drive the resolution of

the litigation." *Id.* at 350 (emphasis in original). Consistent with precedent in class actions

alleging systemic civil rights violations, the Court should find there are questions of law and fact

common to the class. Thus, the proposed class satisfies the commonality requirement of Rule

23(a)(2).

                c.      *The Claims of the Named Plaintiffs Are Typical of Those of the Class.*

        The third component of Rule 23(a) requires that the proposed class representatives'

claims for relief be typical of the claims of the absent class members. The test for "typicality"

asks whether the class representatives "possess the same interest and suffer the same injury" as

other class members, but it does not require that the claims of the named plaintiffs be identical to

the claims of the other class members. *Falcon*, 457 U.S. at 156 (citation omitted); *see also*

*Robidoux*, 987 F.3d at 936-37 ("When it is alleged that the same unlawful conduct was directed

at or affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations in the fact patterns underlying

individual claims."), *see also*, *e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d 1997); *Maziarz*

*v. Housing Auth. of the Town of Vernon*, 281 F.R.D. 71, 82 (D. Conn. 2012); *Perkins v. S. New*

*England Tel. Co.*, 669 F. Supp. 2d 212, 223-24 (D. Conn. 2009). "[T]he critical inquiry is

whether the class representative's claims have the same essential characteristics of those of the

putative class. If the claims arise from a similar course of conduct and share the same legal

theory, factual differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254 F.3d

551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675

F.3d 832, 839–41 (5th Cir. 2012) (quoting 5 James Wm. Moore et al., *Moore's Federal*

*Practice* ¶ 23.24[4] (3d ed. 2000). Additionally, most courts agree that the test for typicality is not demanding. *See, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, *53 (E.D.N.Y. 2019) ("The purpose of typicality is to ensure that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.") (citation omitted); "In government benefit class actions, the typicality requirement is generally satisfied when the representative plantiff is subject to the same statute, regulation, or policy as class members." *Matyasovszky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35, 42 (D. Conn. 2005) (citations omitted).

Here, Plaintiffs easily satisfy the typicality requirement of Rule 23(a)(3) because all of the claims of the Named Plaintiffs and those of the putative class arise from Defendant's adoption and enforcement of 42 C.F.R. § 433.400 through the IFR, resulting in the unlawful termination of Medicaid benefits. Furthermore, the Named Plaintiffs and the Class all are making identical arguments to demonstrate that the Defendant's policy is unlawful, regardless of which particular extra-statutory exception in 42 C.F.R. § 433.400 applies to them.

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.3d at 936-37; *see also, e.g., Exley*, 2015 WL 3649632, at *5; *Maziarz*, 281 F.R.D. at 82; *Matyasovszky*, 226 F.R.D. at 42. The Named Plaintiffs, by proving their claims, will necessarily prove the claims of the class.

Finally, the Named Plaintiffs have a personal interest in this litigation which is reasonably related to the harm experienced by all class members. *See Risinger ex rel. Risinger v.*

*Concannon*, 201 F.R.D. 13, 22 (D. Me. 2001) (finding typicality where plaintiffs, invoking same Medicaid Act provisions, allege same systemic deficiencies, and sought same relief). Thus, the Named Plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

> d.    *The Class Representatives Fairly and Adequately Represent the Interests of the Class.*

Rule 23(a)(4) requires that the representative plaintiffs in a class action fairly and adequately protect the interests of the entire class. In order to satisfy this requirement, two criteria must be met: (1) the class representatives must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the attorneys representing the class must be qualified and competent. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted); *see also*, *e.g., Marisol A.*, 126 F.3d at 378; *Exley*, 2015 WL 3649632, at *6; *Maziarz,* 281 F.R.D. at 82. Both elements of Rule 23(a)(4) are met in this case.

> (1)    *The Named Representatives Will Adequately Represent the Class.*

In order for the Named Plaintiffs to be deemed adequate to represent the class, their interests must coincide with those of the unnamed class members. *Marisol A.,* 126 F.3d at 378; *see generally* Adequacy of representation is "satisfied unless 'plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Here, all members of the Class have suffered from the same unlawful practice of the Defendant: elimination of medically necessary health services through the adoption and implementation of 42 C.F.R. § 433.400 through the IFR in contradiction to Section 6008 of the Coronavirus Response Act. *See* Am. Compl. ¶¶ 31-32; Carr Decl. (ECF Dkt. # 3-2); Moore Decl., (ECF Dkt. #3-3); Wilson Decl., (ECF Dkt. #3-4); Shaw Decl.; and Katz Decl. They also all seek the same remedies: an order from the Court declaring the adoption and implementation

of 42 C.F.R. § 433.400 through the IFR to violate the APA and directing Defendant to set aside this provision of the IFR. *See* Am. Compl. Request for Relief, ¶¶ A-E. The claims raised, and the relief sought, operate equally to benefit all class members.

Even if all of the Named Plaintiffs were to have their Medicaid benefits restored before a class is certified in this case, because their claims are transitory in nature and they have timely filed a motion for class certification, the Named Plaintiffs' claims relate back to the time of the filing of the Amended Complaint and this motion, and, therefore, are not rendered moot. *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021)[8] ("'[A]case will not be moot, even if the controversy as to the named plaintiffs has been resolved, if: (1) it is uncertain that a claim will remain live for any individual who could be a named plaintiff long enough for a court to certify the class; and 2) there will be a constant class of persons suffering the deprivation complained in the complaint.'") (quoting *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016)); *Robidoux*, 987 F.2d at 938-39 (finding that plaintiffs and putative class members class action to challenge the state's delays in providing food stamps to eligible recipients was not moot even though the named plaintiffs received their delayed benefits prior to class certification). Here, although two of the Named Plaintiffs' benefits have been temporarily restored due to voluntary action by Defendant, it is temporary.  But even if that relief were not temporary, their claims would not be moot and they would have standing to bring them and serve as class representatives.

Finally, the Named Plaintiffs have the same interests as other class members.  Thus, the Named Plaintiffs can fully and adequately represent the legal rights and seek the legal remedies to which all members of the putative class are entitled, as required by Rule 23(a)(4).

---

[8] *Bellin* involved a challenge on behalf of a putative class of Medicaid recipients whose request for Medicaid-funded in-home care services was denied without sufficient due process. The court held that, even though the named plaintiff was receiving the full amount of in-home service hours that she needed after she filed her lawsuit, because her claim was transitory in nature, the mootness doctrine for inherently transitory claims applied. 6 F.4th at 473-74.

(2)    *Counsel for the Plaintiffs will Adequately Represent the Class.*

The factors that courts consider in determining the adequacy of plaintiffs' counsel in proposed class actions include: the attorneys' professional skills, experience, resources, and lack of conflicts with the class. *See N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir.), *cert. denied*, 444 U.S. 956 (1979); *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y. Purchase Collage*, 331 F.R.D. 279 (S.D.N.Y. 2019)("class counsel must be qualified, experienced, and generally able to conduct the litigation); *Rodriguez v. Carlson*, 166 F.R.D. 465, 473 (E.D. Wash. 1996) (the court must determine if "counsel representing the class is qualified and competent . . . ."). Plaintiffs' Counsel are well-qualified to handle this action and will prosecute it vigorously on behalf of the class. Collectively, Plaintiffs' Counsel has extensive experience in class action litigation in Medicaid cases and involving administrative law, command the necessary resources to competently represent the class, and have no other professional commitments that are antagonistic to, or that would detract from, their efforts to seek a favorable decision for the class in this case. *See* Section E, *below* at p. 35.

e.    *Proposed Class Is Ascertainable*

In addition to the requirements of Rule 23, the Second Circuit requires that the class be "ascertainable," which is defined using objective criteria that establish a membership with definite boundaries . . . ." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). The class must also "be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). Here, the proposed class definition provides clear objective criteria as to who is a class member. Specifically, to be a class member, an individual must meet the following criteria: 1) have been enrolled in Medicaid in any state or the District of Columbia; 2) on March 18, 2020 or later; and 3) either had their Medicaid eligibility terminated

32

or reduced to a lower level of benefits on or after November 6, 2020, or will have their Medicaid eligibility terminated or reduced to a lower level of benefits prior to a redetermination conducted after the end of the PHE, for a reason other than moving out of the state or the District (including through death) or voluntarily disenrolling from benefits. These clear objective criteria allow the Court to certify a class that is "'readily identifiable, such that the court can determine who is in the class, and thus, bound by the ruling'…without needing to resolve the merits of Plaintiffs' claims." *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009). Thus, Plaintiffs satisfy the Second Circuit's requirement that a class, to be certified, must be ascertainable.

2.    This Action Meets the Requirements of Rule 23(b)(2).

Courts have recognized that class actions certified under subsection (b)(2) of Rule 23 of the Federal Rules of Civil Procedure are particularly important in civil rights cases where injunctive relief is sought, as in the present case. *Yaffe*, 454 F.2d at 1366 (Rule (b)(2) is "uniquely suited to civil rights actions"); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1152 (11th Cir. 1983); *Office of Protection & Advocacy*, 706 F. Supp. 2d 289("The entire purpose behind Rule 23(b)(2) is to resolve disputes concerning the existence of a policy and practice of discrimination against a broad class of individuals.") quoting *Messier v. Southbury Training Sch.*, 183 F.R.D. 350, 357 (D.Conn. 1988); *see also* Advisory Committee Note on Rule 23, 39 F.R.D. 69, 102 (1966). Certification of classes has been deemed "an especially appropriate vehicle for civil rights actions" seeking systemic reform. *See Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980).  In cases seeking only equitable relief, class certification is necessary to make sure that mandatory relief runs to benefit all class members. *Jane B. v. N.Y. City Dept. of Social Servs.*, 117 F.R.D. 64, 72 (S.D.N.Y. 1987). Under Fed. R. Civ. P. 23(b)(2), "[c]lass certification is appropriate where the defendant has acted or refused to act on grounds generally

33

applicable to the class, thereby making injunctive and declaratory relief appropriate." *Marisol A.*, 126 F.3d at 378.

The elements of Rule 23(b)(2) are satisfied in this case, and class certification is appropriate, because it is a civil rights class action seeking class-wide declaratory and injunctive relief, which is exactly the type of litigation that the Federal Rules Advisory Committee anticipated would be certified under Rule 23(b)(2). *See* Advisory Committee Notes to Rule 23, 39 F.R.D. at 102; *Coley*, 635 F.2d at 1378. Defendant's adoption and implementation of 42 C.F.R. § 433.400 through the IFR in violation of the APA violates the federal statutory rights common to both the Named Plaintiffs and the unnamed class members. Thus, Defendant is acting or refusing to act in a manner that equally affects and is "generally applicable" to the entire class. Therefore, final declaratory and injunctive relief is appropriate, precisely because it will resolve the legality of the challenged actions and inaction for the class as a whole.

The Second Circuit also has recognized the importance of class certification where a defendant governmental agency may attempt to voluntarily perform a specific action sought in a lawsuit for an individual plaintiff in order to try to moot the representative plaintiff's claim. *White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977)). A similar risk exists here: Defendant could provide the Named Plaintiffs with restoration of their Medicaid benefits by instructing the states in which they reside not to enforce 42 C.F.R. § 433.400 of the IFR as to them individually, thereby mooting the Named Plaintiffs' claims, while continuing to deny similar relief to other similarly situated persons. While Defendant has not done that in this case, he did temporarily grant relief which had the effect of mooting the TRO request for two of the plaintiffs.

Plaintiffs claim that Defendant has violated the APA by adopting and imposing the portion of the IFR codified in 42 C.F.R.§ 433.400 to eliminate or reduce the Medicaid benefits to

beneficiaries that they receive under Section 6008 of the Coronavirus Response Act and without the requisite notice and opportunity to be heard. Am. Compl. ¶¶ 8, 17, 81, 92, 95, 154. This pattern and practice of standardized conduct by Defendant towards the putative class is susceptible to a single nationwide injunction. *See* Discussion in Section D.1, *above,* at p. 32.

Here, Plaintiffs have provided the Court with extensive evidence in support of class certification and have demonstrated the specific details of a single injunction. *See* Carr Decl.; Moore Decl.; Wilson Decl.; Shaw Decl.; Katz Decl.; Toubman Decl.; 2nd Toubman Decl.; and the attached exhibits; Am. Compl.; and publicly available data included in Plaintiffs' Mot. for TRO and PI and Class Certification Motion. The injunctive relief Plaintiffs seek is to set aside the portion of the IFR codified in 42 C.F.R.§ 433.400 requiring the unlawful elimination or reduction of Medicaid benefits to beneficiaries which would resolve the claims of the Named Plaintiffs and the proposed class as a whole in a single stroke, *not* individualized relief. Am. Compl., Request for Relief ¶¶ B-C.

Moreover, differences concerning an individual's disability and/or medical condition do not preclude certification in cases such as this one where those class members have suffered a common injury and where that injury can be easily redressed by a single injunction that requires the requested setting aside of the unlawful portion of the IFR. Thus, because the Amended Complaint seeks—and the APA violations can be remedied by—a single injunction, certification of the proposed class is appropriate under Rule 23(b)(2).

E.    *Plaintiffs' Counsel Should Be Appointed Co-Class Counsel Pursuant to Rule 23(g).*

Rule 23(g) requires a court to appoint "class counsel" when a class is certified. Fed. R. Civ. P. 23(g)(1). Closely tracking the language of Rule 23(a)(4), Rule 23(g)(4) requires that an attorney serving as class counsel "fairly and adequately represent the interests of the class." As discussed in Section D.1.d(2), *above* at p. 32, Plaintiffs have shown how their attorneys, based

upon their vast experience representing Medicaid-eligible individuals and in other civil rights cases, will fairly and adequately represent the class. *See* Sec. D.1.d(2), above at p. 32.

Rule 23(g) requires the Court to consider:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class.

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee Notes to the 2003 amendments that added subsection (g) state that "[in] evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor necessarily [will] be determinative in a given case."

Here, the Named Plaintiffs are jointly represented by Disability Rights Connecticut ("DRCT"), Justice in Aging ("JIA"), the National Health Law Program ("NHeLP"), and Stinson LLP. It is clear, based upon the pleadings, motions, supporting declarations and attached exhibits filed in this case, that Plaintiffs' counsel has fully and completely identified and analyzed the legal issues in this case. Each attorney and firm also bring unique resources, experience, and skills to the case. Those firms should be appointed as class co-counsel pursuant to Rule 23(g).

DRCT is the federally designated protection and advocacy system for the state of Connecticut and is charged with protecting the rights of individuals with disabilities throughout the state. It has extensive knowledge of and experience with the workings of Connecticut's service array and service delivery systems for individuals with disabilities, including under the Medicaid program. It is also in direct contact with the Named Plaintiffs from Connecticut and numerous other class members through its ongoing outreach and intake processes.

Sheldon Toubman is the lead counsel for DRCT. Attorney Toubman has over 31 years of litigation experience with a specific and extensive focus on representing individuals in Medicaid cases, including numerous class actions. He has extensive experience with litigation in the Medicaid area, both in Connecticut and nationally. He has been counsel for plaintiffs in several certified class actions in this Court involving the Medicaid program. *See DeSario. v Thomas*, 139 F.3d 80 (2d Cir. 1998), *vacated and remanded*, *Slekis v. Thomas,* 119 S.Ct. 864 (1999); *Shafer v. Bremby*, 2013 WL 12291027 (D. Conn. 2013); *Karen L. v. Physicians Health Services*, 202 F.R.D. 94 (D. Conn. 2001); *Ladd v. Thomas*, 962 F. Supp. 284 (D. Conn 1997). Fees have been awarded by the Court to Attorney Toubman for his successful work on behalf of certified plaintiff classes of Medicaid enrollees. *See, e.g., Ladd v. Thomas*, 47 F.Supp.2d 236 (D. Conn. 1999).

Deborah Dorfman, DRCT Executive Director and co-counsel, has 30 years of experience representing individuals with disabilities and has litigated a number of class actions and other large systemic reform cases throughout the United States raising claims under the Medicaid Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Due Process Clause of the United States Constitution including: *Allen, v. Western State Hosp*., 3:99-cv-05018, (W.D. WA 1999)(RJB); *Marr ex rel, Marr v. Eastern State Hosp*., CV-02-0067-WFN (E.D.WA 2002); *Rust v. Western State Hosp*., (W.D. WA 2001), *Boyle, v. Dreyfus,* 2010 WL 2671385 (WD WA 2010)*; Steward* v. *Janek,* 315 F.R.D. 472 (W.D. Tx. 2016); *V.L. v. Wagner*, 669 F. Supp.2d 1106 (N.D. Cal. 2009), among others. Deborah Dorfman has been awarded attorneys' fees for her successful class and other systemic reform litigation.

Jane Perkins and Miriam Heard, attorneys at the NHelP, are also representing the plaintiffs. Miriam Heard has 13 years of Medicaid representation in the state of North Carolina

and is currently co-counsel in *WB v Marstiller*, 3:21-cv-00771 (M.D. Fla.) where class

certification is pending. Jane Perkins, Legal Director of the NHeLP, has served as lead- or co-

counsel in a number of Medicaid class action and APA cases. Her class action cases include *O.B.*

*v. Norwood*, 838 F.3d 837 (7th Cir. 2016), *aff'g*, 170 F. Supp. 3d 1186 (N.D. Ill. 2016); *Davis v.*

*Shah*, 821 F.3d 231 (2d Cir. 2016), *aff'g in part & vacating in part*, 2013 WL 6451176 (W.D.

N.Y. Dec. 9, 2013), *same case*, 2012 WL 1574944 (W.D. N.Y. May 3, 2012); *K.C. v. Wos*, 716

F.3d 107(4th Cir. 2013), *aff'g*, 2013 U.S. Dist. LEXIS 43822 (E.D.N.C. Mar. 29, 2012); *Pashby*

*v. Delia*, 709 F.3d 307 (4th Cir. 2013), *aff'g*, 279 F.R.D. 347 (E.D.N.C. 2011); and *Sneede v.*

*Kizer*, 728 F. Supp. 1003 (N.D. Cal. 1990) *same case*, 856 F. Supp. 526 (1994) (recognizing

Medicaid law "as one of the most complex, arcane, and difficult areas of practice," and awarding

EAJA fees to attorneys to NHeLP attorneys, including Jane Perkins, finding them to be "highly

experienced, well regarded, litigators in the area of Medicaid benefits").

     Carol Wong, Associate Litigation Director at JIA, has extensive experience litigating

class action and other large scale civil rights cases. She has represented plaintiffs in cases

including *Alexander v. Azar*, No. 3:11-cv-1703 (MPS) 2020 WL 1430089 (D. Conn. 2020)

(Medicare class action), *aff'd* 24 F.4th 116 (2nd Cir. 2022) and *Chinatown Service Center v. U.S.*

*Department of Health and Human Services*, 1:21-cv-00331-JEB (D.D.C.) (compl. filed Feb. 5.

2021) (Affordable Care Act Section 1557 APA case). Before coming to JIA, she spent nearly ten

years at the Department of Justice, Civil Rights Division, litigating employment discrimination

cases, including large scale pattern or practice cases.

     Regan Bailey, Litigation Director at JIA, has considerable experience as class counsel.

She has represented the plaintiffs' class in Medicaid and Americans with Disabilities Act cases

across the country, including *Alexander v. Price*, 275 F.Supp.3d (D CT, 2017), *Boyle v. Dreyfus*,

2010 WL 2671385 (WD WA 2010), *Evans v. Williams*, 139 F.Supp.2d 79, 83 (D. D.C. 2001), and *Benjamin H v. Ohl*, 1999 WL 34783552 (SD WV 1999).

Harvey Reiter, a partner in the Washington DC office of Stinson LLP, has participated in numerous rulemakings and adjudications under the Administrative Procedure Act (APA) before various federal administrative agencies and has participated in numerous cases before federal district courts and circuit courts of appeal involving review of administrative agency decisions under the APA. He has written several law review articles on APA issues and is also an adjunct professor of law at George Washington University Law School where his class in Regulated Industries covers various aspects of administrative law. Among the APA cases in which he has served as counsel and/or co-counsel or as amicus counsel are the following: *Federal Energy Regulatory Commission v. Electric Power Supply Ass'n*, 577 U.S. 260 (2016); *Brand X Internet Services v. FCC*, 345 F.3d 1120 (9th Circ. 2003), *rev'd Nat'l Cable & Tel. Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005); *California Public Utilities Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018); *City of Redding, Ca. v. FERC*, 693 F.3d 8328 (9th Cir. 2012); *City of Gaithersburg, Md. et al. v. Dept. of Homeland Security*, No. 8:19-cv-02851-PWG (D. Md. 2019); *American Gas Ass'n v. FERC*, 912 F.2d 1496 (D. C. Cir. 1990); *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667 (D. C. Cir. 2000); *New Jersey Bd. of Public Utilities v. FERC*, 744 F. 3d 74 (3d Cir. 2014); *Allegheny Electric Coop., Inc. v. FERC*, 922 F.2d 73 (2nd Cir. 1990); *Connecticut Dept. of Public Utility Control v. FERC*, 593 3d 30 (D. C. Cir. 2010); *Terkel v. Centers for Disease Control & Prevention*, 15 F. 4th 683 (5th Cir. 2021); *In re FCC 11-161*, 753 F.3d 1015 (10th Cir. 2014); *Sacramento Municipal Utility Dist. v. FERC*, No. 2:17-cv-02461-TLN-AC  (E.D. Ca.); *Jeronimo Diaz de Jesus v. DHS*, No. 22-cv-214 (filed Jan. 28, 2022,

D. Md. 2022); *Chinatown Service Center, et al. v. HHS*, No. 1:21-cv-0031-JEB  (filed Feb. 21, 2021 (D. DC. 2021).

There is no conflict among counsel. This is a Rule 23(b)(2) class action seeking only declaratory and injunctive relief. Any attorneys' fees for Plaintiffs' counsel will be awarded by the Court pursuant to federal fee-shifting statutes based upon the time reasonably expended by Plaintiffs' counsel. Thus, pursuant to Rule 23(g), Named Plaintiffs respectfully request that this Court appoint the attorneys from DRCT, JIA, the NHeLP, and the Stinson law firm as co-class counsel in this case.

## IV.    CONCLUSION AND REQUESTED RELIEF

For the reasons set forth above, Plaintiffs respectfully request that the Court certify a plaintiff class consisting of all individuals who were enrolled in Medicaid in any state or the District of Columbia on March 18, 2020 or later and had their Medicaid eligibility terminated or reduced to a lower level of benefits on or after November 6, 2020, or will have their Medicaid eligibility terminated or reduced to a lower level of benefits prior to a redetermination conducted after the end of the PHE, for a reason other than moving out of the state or the District (including through death) or voluntarily disenrolling from benefits.

In addition, the Named Plaintiffs respectfully request that this Court appoint Plaintiffs' Counsel as Class Counsel to represent the Class in this action pursuant to Rule 23(g).

DATED:  August 26, 2022


Respectfully submitted,


/s/ Sheldon V. Toubman
SHELDON V. TOUBMAN
Fed Bar No. ct08533
Phone: (475)345-3169
E-mail: sheldon.toubman@disrightsct.org
DEBORAH A. DORFMAN (Admitted *Pro Hac Vice*)
CT Juris No. 442946
Phone: (860)469-4463
E-mail: deborah.dorfman@disrightsct.org
Disability Rights Connecticut
846 Wethersfield Avenue
Hartford, CT 06114

CAROL A. WONG (Admitted *Pro Hac Vice*)
DC Bar No. 1035086
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1995
E-mail: cwong@justiceinaging.org

REGAN BAILEY (Admitted *Pro Hac Vice*)
DC Bar No. 465677
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org

JANE PERKINS
NC Bar No. 9993
CA Bar No. 104784
Email: perkins@healthlaw.org
MIRIAM HEARD
NC Bar. No. 39747
Email: heard@healthlaw.org
(Admitted *Pro Hac Vice*)
National Health Law Program

1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Phone: (984) 278-7661

HARVEY L. REITER
(Admitted *Pro Hac Vice*)
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 2006
Email: harvey.reiter@stinson.com
Phone: (202)728-3016
Fax: (202)572-9968

Counsel for Plaintiffs

42

## <u>Certificate of Service</u>

I hereby certify that on August 26, 2022, a copy of the foregoing document was filed electronically and served by overnight delivery to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by overnight delivery to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/Sheldon V. Toubman
Sheldon V. Toubman