UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH CARR, BRENDA MOORE, MARY ELLEN WILSON, MARY SHAW, and CAROL KATZ, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Civil Action No. 3:22-cv-988 (MPS)<br><br>CLASS ACTION REQUESTED<br><br>October 11, 2022 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION**

Defendant's September 26 brief ("Def.'s Class Opp'n") (Docket No. 58) offers a hodgepodge of arguments against Plaintiffs' motion for certification of a nationwide class (Docket No. 44). They are mostly a rehash of Defendant's arguments opposing Plaintiffs' motion for a nationwide preliminary injunction (Docket No. 3), and he completely ignores Plaintiffs' rebuttal to those arguments in their reply brief supporting a preliminary injunction ("Pls.' PI Reply Br.") (Docket No. 53) filed a full week before his class opposition brief.

Most significantly, Defendant also filed his class brief several days *after* his September 23, 2022 release of a notice of proposed rulemaking regarding the Interim Final Rule ("IFR"), 42 C.F.R. § 433.400, that directly contradicts his position on standing. Defendant has argued that Plaintiffs lack standing because their injuries are not "redressable by Defendant" because "[o]nly the states, not the federal government, have authority to reinstate the eligibility of a Medicaid

beneficiary . . . ." Def.'s Class Opp'n at 1-2. But his earlier notice[1] states the opposite. There, he states that he is "*considering* whether (1) § 433.400 should be rescinded, and (2) CMS should replace that provision with a final rule that implements its original interpretation of Section 6008(b)(3) of the FFCRA." 87 Fed. Reg. 58458 (emphasis added). He adds, "if CMS chooses to take these steps, it may *require* States to offer Medicaid beneficiaries whose coverage was changed in a manner consistent with § 433.400 an opportunity to re-enroll in, or to have their enrollment changed back to, their prior coverage." *Id*. (emphasis added).

He also claims that states, having the option to accept additional Medicaid funding, might refuse it rather than extend coverage. Def.'s Class Opp'n at 12. But his notice, which *preceded* the brief, observes that "the fiscal situations of many States may have changed since the IFR was issued in November 2020" and that "hundreds of billions of dollars" in COVID-related relief made available to states under the American Rescue Plan of 2021, 42 U.S.C. § 802, "may have mitigated the concerns that States had raised with CMS and that CMS had considered in issuing the IFR." 87 Fed. Reg. 58457. Plaintiffs discuss these points further below.

### **Plaintiffs' Preliminary Injunction Reply Brief and Defendant's September 23rd Notice of Rulemaking Establish Redressability**

Defendant argues in his class opposition brief (as he did in opposing a preliminary injunction) that Plaintiffs lack standing to seek relief from this Court for themselves or others because any relief the Court provides would not *necessarily* result in their reinstatement on Medicaid, because "the states alone—not the federal government—are responsible for making Medicaid eligibility determinations," and "the federal government . . . has no way of redressing

---

[1] Medicaid Program; Temporary Increase in Federal Medical Assistance Percentage (FMAP) in Response to the COVID-19 Public Health Emergency (PHE); Reopening of Public Comment Period," 87 Fed. Reg. 58456 (Sept. 27, 2022) (to be codified at 42 CFR 433.400), *available at*
https://www.federalregister.gov/documents/2022/09/27/2022-20973/medicaid-program-temporary-increase-in-federal-medical-assistance-percentage-fmap-in-response-to-the.

Plaintiffs' injuries, nor the injuries of members of the putative class." Def.'s Class Opp'n at 4. But the fallacy in Defendant's claim was pointed out in Plaintiffs' preliminary injunction reply brief, which noted Connecticut's quick reinstatement of Plaintiffs Carr and Moore after Defendant advised Connecticut's Medicaid agency he would not enforce the IFR as to them. Pls.' PI Reply Br. at 2-3; *see also id.* at *2* (discussing *Cmty Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 135 (2d Cir. 2014)). Tellingly, Defendant's own proposed rulemaking would "*require* States to offer Medicaid beneficiaries whose coverage was changed in a manner consistent with § 433.400 an opportunity to re-enroll in, or to have their enrollment changed back to, their prior coverage." 87 Fed. Reg. 58458 (emphasis added).

**Defendant's Own IFR and His Notice Show that the Class is Ascertainable**

Defendant argues that Plaintiffs have not met the Second Circuit's ascertainability requirement because their proposed class "is defined by subjective, not objective, criteria . . . ." Def.'s Class Opp'n at 5. He even maintains that identifying class members would require a "mini-trial," *id.*, because "it may not be readily apparent which package best meets the beneficiary's needs or which provides a 'lower level' of benefits, as Plaintiffs put it." *Id.* at 6. This is a complete red herring.

Defendant wrote and then enforced his own *uniform* IFR rule telling the states what categories of individuals must be cut off of some Medicaid programs, and the states then proceeded to do just that. The relief sought would entail no "mini-trials." Whatever analysis was followed by each state in deciding whether a specific person fell under one of these newly created exceptions is done. The relief sought, and readily grantable by this Court—as Defendant's own notice makes obvious—is that Defendant simply require all the states to re-

3

enroll everyone cut off of the Medicaid programs they were on before the states implemented the IFR. The states certainly know who they cut off for the reasons required under the IFR.

Since Defendant only needs to require the states to reverse the terminations and transfers made due to the IFR for a discrete set of known individuals, this satisfies the requirement that the class is identifiable and clearly "would not require a mini-hearing on the merits of each case." *In re Petrobras Sec.*, 862 F.3d 250, 264, 266 (2d Cir. 2017). Again, Defendant's own notice provides the template: the class would simply include all individuals "whose coverage was changed" due to the IFR. 87 Fed. Reg. 58458.

Defendant's additional argument that the class is overbroad because it may include individuals terminated from Medicaid benefits not because of the IFR but in error, Def.'s Class Opp'n at 6, is specious. Plaintiffs seek no corrections to erroneous state terminations. They ask only that the Court order Defendant to require the states to undo the cuts they erroneously believed were necessitated by the IFR. It is an objective fact whether a given state, thinking that a person fell under one of the new IFR exceptions, terminated that person's benefits.

**Defendant's Arguments Against Commonality and Typicality Ignore Plaintiffs' Claims, Plaintiffs' Preliminary Injunction Reply Brief, and His Own New Notice**

Defendant asserts that commonality and typicality are not met because "each states' Medicaid program varies so widely, putative class members will present significant factual differences, not minor ones. And each named plaintiff is impacted by only one subsection of the Rule, 42 C.F.R. § 433.400 (c)(2)(i)(B)." *Id.* at 2. "Plaintiffs' proposed class definition," he adds, "rests on the inherently fact-specific inquiry of a beneficiary's eligibility determination," which "require[s] states to closely examine the income and resources of a given beneficiary," *id.* at 7, and that, because "each state has its own Medicaid plan that offers different sets of benefits," this "lack of uniformity across states belies any attempt to suggest that putative class members . . .

have 'common question of law or fact.'" *Id.* at 8. These arguments are also red herrings because this case challenges Defendant's uniform and national application of his IFR.

States do have widely different eligibility standards for their Medicaid programs and divergent optional benefits under each program. But *none* of that is relevant to class certification. The class simply consists of individuals cut off of *any* state Medicaid program *because of the IFR*'s new exceptions to Section 6008 of the Coronavirus Response Act. Thus, whatever a state's full benefit Medicaid income limit or its income or asset eligibility standards for its Medicare Savings Programs ("MSP"), *any* person cut off of *a* full benefit Medicaid program by *any* state *because of the IFR* would be an injured class member. Similarly, whatever the financial eligibility for pregnant individuals and post-partum coverage under Medicaid in a given state, *any* individuals cut off of such coverage during the five year bar *because of the IFR*, 42 C.F.R. § 433.400(d)(2), would be an injured class member.

Defendant also argues that typicality is not met because Plaintiffs fall under "only one subsection of 42 C.F.R. § 433.400—the subsection that applies to [MSPs]" -- yet seek relief for individuals cut off of Medicaid based on *any* of the exceptions to maintenance of coverage newly created in the IFR. *Id.* at 11 (citation omitted). As Plaintiffs explained, "*any* new exceptions to the continuous enrollment requirements in the Act are *ultra vires*, and CMS had no statutory authority to invent new exceptions beyond the two set forth by Congress itself . . . . As important, lack of compliance with [the Administrative Procedure Act] notice and comment requirements invalidates the entire provision (Section 433.400) related to maintenance of coverage." Pls.' PI Reply Br. at 10 (emphasis in original). Given that these are the legal claims in this case, it is no more relevant to say that plaintiffs cut off under the IFR because they

5

qualified for an MSP cannot represent a person cut off after turning 21, than to say that none of Plaintiffs can represent male class members because all five happen to be female.

Plaintiffs' legal claims go to the permissibility of the part of the IFR creating Section 433.400 *in its entirety.* The variances that Defendant identifies—both in state programs and as to which exception was the basis for a given termination—make no difference to individual class members. Simply put, the IFR either permissibly was adopted without advance notice and comment or it was not, and the statutory language about "such benefits" either permitted Defendant to create new exceptions beyond the two in the statute or it did not. These are classic common questions affecting all class members equally. If Defendant violated either legal requirement, an injunction based on a finding that he did so will inure to the benefit of all members without further Court involvement.

**The Class Readily Satisfies Rule 23(b)(2)**

Disregarding Plaintiffs' preliminary injunction reply brief, the Defendant's new notice, and even his original IFR's preamble, Defendant baselessly declares, once again, that Rule 23(b)(2) is not satisfied because, "[a] single injunction would not provide relief to the members of the putative class because the temporary increase in Medicaid funding is *optional* . . . . [T]he states in which they reside *could* decide to reject the increased funding." Def.'s Class Opp'n at 12 (emphasis added). First, by its own terms it is speculative. Second, it directly contradicts Defendant's observation in the preamble to his own IFR that "CMS is *not aware* of any states or territories not currently claiming this temporary FMAP [Federal Medical Assistance Percentage] increase, or *of any state or territory that intends to cease claiming it*." 85 Fed. Reg. 71148 (emphasis added); *see also* Pls.' PI Reply Br. at 3-4 (additional discussion). Third, it disregards an analysis cited by Plaintiffs that, on average, states are estimated to be receiving about two

dollars in enhanced federal match for every dollar they are paying out for individuals on Medicaid due to the protections of the Coronavirus Response Act. Pls.' PI Reply Br. at 3 n.3. Finally, Defendant ignores his own September 23rd observation that funds to the states under the American Rescue Plan "mitigated the concerns that States had raised with CMS . . . ." 87 Fed. Reg. 58457. In sum, the argument that a nationwide injunction under Rule 23(b)(2) will not actually inure to the benefit of Medicaid enrollees in every state, because some states might "decide to reject the increased funding," is now rejected by everyone, including Defendant.

The suggestion that Rule 23(b)(2) certification also is not appropriate because the harm is different depending upon which IFR exception caused a given termination, Def.'s Class Opp'n at 10, is premised on an erroneous view of what makes common questions in a Rule 23(b)(2) class action, unlike a damages class action under Rule 23(b)(3). There is no requirement that the harm be identical or even similar for every class member, as long as it derives from the same challenged conduct or policy by the defendant and would be remedied by a single injunction. *In re Vitamin C. Antitrust Lit.*, 279 F.R.D. 90, 117 (E.D.N.Y. 2012) ("Differences between the extent of harm suffered by each class member do not make Rule 23(b)(2) certification inappropriate."), *citing Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (rejecting argument that differing harms of class members challenging unlawful conduct by child welfare system defeated (b)(2) certification); *see also Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993) ("the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims"). Here, as Plaintiffs have noted, even among the handful of Named Plaintiffs, some are harmed by going without essential home care services, by going without access to cancer treatment, or by "merely" piling up debts for unaffordable cost-sharing requirements, while more than one is experiencing extreme stress over this. *See* Decls. of Named

Pls. Carr, Moore, Wilson, Shaw, and Katz (Docket Nos. 3-2, 3-3, 3-4, 44-3 and 44-4, respectively). But none of this matters because, in a Rule 23(b)(2) case, the Court will never have to adjudicate the level of harm or determine compensation—only injunctive relief is sought or needed. This is completely unlike the facts in the *Wal-Mart* damages case relied upon by Defendant for this erroneous proposition. Def.'s Class Opp'n at 12.

While variations in the amounts of harm are irrelevant to class certification in a Rule (b)(2) case, *some* harm must be established under an Administrative Procedure Act ("APA") case and *irreparable* harm is needed for a preliminary injunction. But the federal courts have uniformly held that, in general, *as a matter of law, the mere termination of health coverage is inherently irreparable harm,* and particularly for low-income Medicaid enrollees lacking alternative resources. Indeed, in the Second Circuit, even fear of lack of access to health care because of a termination of benefits constitutes irreparable harm. *See LaForest v. Former Clean Air Holding Co., Inc.*, 376 F. 3d 48, 55 (2d Cir. 2004). *See also Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (holding *possibility* that plaintiffs would be denied Medicaid benefits sufficient to establish irreparable harm); Pls.' Mem. in Supp. of a Mot. for TRO PI at 21-24 (Docket No. 3-1) (additional discussion). Defendant simply ignored Plaintiffs' brief on this critical point relevant to both the granting of preliminary injunctive relief and class certification.

**The Injunction Should Not Be Limited to Just Three States**

Defendant argues that, if a class is to be certified, it "should be limited to beneficiaries who were moved to an MSP group pursuant to the IFR and reside in the states of Connecticut, Nebraska, and Delaware." Def.'s Class Opp'n at 12. Plaintiffs have already fully addressed the irrelevance of which particular IFR exception (all of which are alleged by Plaintiffs to be both procedurally and substantively invalid under the APA) applies to a class member. But Defendant

does not even attempt to explain how it would make sense to limit a class to these three states, in three different circuits, which just happen to be where the current five Plaintiffs reside. The reason is obvious: such a distinction is indefensible under both the APA and Rule 23.

Defendant does not dispute that the IFR challenged here is a uniform rule applied to all states. And, in his class opposition brief, he confirms that the new exceptions in the IFR are all "required" to be the basis of terminations by all states. Def.'s Class Opp'n at 1, 10. Similarly, if the Court agrees with either or both of Plaintiffs' APA arguments invalidating the IFR, it will necessarily be invalidated in *all* states and nationwide injunctive relief will be appropriate. Accordingly, only a national class will be appropriate to fully address the harm from that invalidated rule. *See Lynch v. Rank,* 604 F. Supp. 30, 38 (N.D.Cal.1984), *aff'd* 747 F.2d 528 (9th Cir.1984) (certifying nationwide class of Medicaid enrollees against Defendant over his objection, in case challenging his interpretation of Medicaid eligibility under federal statute)[2]; *see also Sherman v. Griepentrog*, 775 F. Supp. 1383, 1387 (D. Nev. 1991) (granting circuit-wide class action in Medicaid case against the federal government).

Finally, Defendant erroneously maintains that "Plaintiffs fail to identify a single instance in which a court held that a nationwide class of Medicaid beneficiaries satisfied the 'commonality requirement.'" Def.'s Class Opp'n at 8, *accord id*. at 1. In distinguishing *Thompson v. Raiford*, No. 3:92-CV-1539-R, 1993 WL 497232 (N.D. Tex. Sept. 24, 1993), on grounds that it was a settlement class, however, he ignores that the requirements for certification

---

[2] As the court in *Lynch* stated:
> [P]laintiffs in this action are by definition poor and disabled . . . . If this Court issued a judgment in favor of California plaintiffs only, it seems quite likely that the Secretary will do as she did in Massachusetts and limit the effect of that judgment to this state; therefore, other plaintiffs and public interest groups in other forums will be forced to throw their efforts and resources into relitigating the issue. This is not an efficient use of the courts, nor is it equitable to pit plaintiffs against the far greater resources of the federal government in a state-by-state battle over implementation of the Amendment.

604 F. Supp. at 38.

of a class under Rule 23(a) and (b) are the same for both settlement and litigation classes. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620-62 (1997), *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11 (E.D.N.Y. 2019) ("Before certification is proper for any purpose -- settlement, litigation, or otherwise -- a court must ensure that the requirements of Rule 23(a) and (b) have been met"; "'the Second Circuit's general preference is for granting rather than denying class certification.'"). The *Thompson* court did, in fact, go through all these requirements of Rule 23, making findings each was satisfied.

Multi-state Medicaid class actions are relatively rare because they usually challenge *state* agency practices or rules and these can vary from state to state. But where, as here, state Medicaid decisions are fully driven by Defendant's *uniform federal rule* or interpretation, he has in fact been sued in multi-state and even national class actions, which have been certified after he hotly contested them. *See, e.g.*, *Lynch*, 604 F. Supp. 30; *Darling v. Bowen*, 685 F. Supp. 1125, 1127 (W.D. Mo. 1988), *aff'd* 878 F. 2d 1069 (8th Cir. 1989).[3] These multi-state Medicaid class actions certified against Defendant are a subset of routine Medicaid class certifications, including in cases resulting in class-wide preliminary injunctive relief due to the inherent class-wide harm from termination or *threatened* termination of Medicaid coverage, *see, e.g., Olson v. Wing*, 281 F. Supp. 2d 476 (E.D.N.Y. 2003), *aff'd by summary order*, 66 Fed. App'x 275 (2d Cir. 2003); Pls.' Mem. in Supp. of Mot. for Class Cert. at 16-17 (Docket No. 44-1) (citing cases).

---

[3] As the district court in *Darling* observed:
> Defendants argue that there is a defect in parties for a multi-state class, in that only the Missouri state agency is before the court (in addition to Federal defendants). The same procedure was used, however, in *Lynch v. Rank* [citation omitted]. The basic contention is that the Secretary has misconstrued Congressional action and has supplied unsound direction to the 209(b) states. . . .").

685 F. Supp. at 1127. In affirming the lower court's multi-state class certification in *Darling*, the Eighth Circuit also confirmed that the kind of relief sought by Plaintiffs herein can readily be had in similar circumstances—a misinterpretation of federal law by HHS. 878 F.2d 1069. The federal defendants were ultimately ordered to "'withdraw Transmittal No. 1M 86-2 . . . and promptly notify the 209(b) states that they must tender the full relief mandated by § 12202 of COBRA.'" *Id.* at 1073 (quoting district court's opinion).

DATED:  October 11, 2022

        Respectfully Submitted,

        */s/Sheldon V. Toubman*
SHELDON V. TOUBMAN
Fed Bar No. ct08533
Phone: (475)345-3169
E-mail: sheldon.toubman@disrightsct.org
DEBORAH A. DORFMAN (Admitted *Pro Hac Vice*)
CT Juris No. 442946
Phone: (860)469-4463
E-mail: deborah.dorfman@disrightsct.org
Disability Rights Connecticut
846 Wethersfield Avenue
Hartford, CT 06114

CAROL A. WONG (Admitted *Pro Hac Vice*)
DC Bar No. 1035086
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1995
E-mail: cwong@justiceinaging.org

REGAN BAILEY (Admitted *Pro Hac Vice*)
DC Bar No. 465677
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org

JANE PERKINS (Admitted *Pro Hac Vice*)
NC Bar No. 9993
CA Bar No. 104784
Email: perkins@healthlaw.org
MIRIAM HEARD (Admitted *Pro Hac Vice*)
NC Bar. No. 39747
Email: heard@healthlaw.org
National Health Law Program
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Phone: (984) 278-7661

    HARVEY L. REITER (Admitted *Pro Hac Vice*)
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 2006
Email: harvey.reiter@stinson.com
Phone: (202)728-3016
Fax: (202)572-9968

PLAINTIFFS' COUNSEL

## Certificate of Service

    I hereby certify that on October 11, 2022, a copy of the foregoing document was filed electronically and served by overnight delivery to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by overnight delivery to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    */s/Sheldon V. Toubman*
    Sheldon V. Toubman