## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

DEBORAH CARR, et al, in their individual
capacities and on behalf of a class of
similarly-situated individuals,
          *Plaintiffs*,

              v.                                              No. 3:22cv988 (MPS)

XAVIER BECERRA, Sec'y of the Dept. of
Health and Human Svcs.,
          *Defendant.*

---

## RULING GRANTING PRELIMINARY INJUNCTION

This matter is before the court upon Plaintiffs' motion for a preliminary injunction

(the "Motion").  ECF No. 3.  The United States District Judge presiding over this action

(*Hon. Michael P. Shea, J.*) has referred the instant motion to the undersigned for the

limited purpose of determining whether the named plaintiffs[1] have shown that they are

entitled to a preliminary injunction.  *See* ECF No. 59.  The court has reviewed the Motion,

Defendant's response thereto, *see* ECF No. 45, Plaintiffs' reply, *see* ECF No. 53, and the

record in this matter and is thoroughly advised in the premises.  At a hearing conducted

on October 26, 2022, the court heard testimony from four of the named plaintiffs and oral

---

[1] In their Motion, Plaintiffs sought a nationwide injunction, and at oral argument, they argued that such relief remains within the authority of the undersigned. However, the Motion was fully briefed before issuance of its referral to the undersigned, and the limits of that referral are clear. *See* ECF No. 59 (referring "the motion for injunctive relief **with respect to the named plaintiffs.**") (emphasis added).  To the extent that Plaintiffs thereafter acknowledged the anticipated limits of the present ruling, *see* ECF No. 72 ("Plaintiffs look forward to receiving the ruling on the motion as to the five named Plaintiffs."), without actually abandoning their request for a nation-wide relief, the court stands by its reading of the clear language of Chief Judge Shea's referral.  Accordingly, the discussion herein will not address any arguments that relate to injunctive relief for any individuals beyond the named plaintiffs.

argument from the parties.  For the reasons discussed herein, the court **GRANTS** the named plaintiffs a preliminary injunction.

## I.    BACKGROUND

The effects of the novel coronavirus upon American society were far-reaching, and Congress worked to pass equally comprehensive laws to address the challenges created by the COVID-19 pandemic.   The Families First Coronavirus Response Act (the "FFCRA"), enacted on March 18, 2020, was one such law.   *See* Statement By the President, 2020 WL 1303619, at *1.   Among the provisions of the FFCRA was an alteration to the Social Security Act which allowed for states to receive an increase in federal funding for state Medicaid[2] programs (which the parties and the FFCRA call the "federal medical assistance percentage," or "FMAP").   In order to receive this increase in FMAP, however, states had to abide by certain conditions, one of which was that they would not discontinue Medicaid benefits as to any individual who was enrolled in Medicaid during the COVID-19 public health emergency ("PHE").[3]    FAMILIES FIRST CORONAVIRUS RESPONSE ACT, PL 116-127, March 18, 2020, 134 Stat 178, 208–09.

---

[2] Medicaid is a government program that helps low-income individuals pay for medical care, regardless of their age.  *See New LifeCare Hosps. of N. Carolina*, LLC v. Becerra, 7 F.4th 1215, 1219 (D.C. Cir. 2021) (describing Medicaid as a "cooperative federal-state program—administered by states, and subject to federal guidelines—that pays for medical care provided to eligible low-income individuals.") (citing 42 U.S.C. § 1396 et seq.).  Medicare, on the other hand, is "a federally funded program that reimburses healthcare providers for delivering medical care to qualifying elderly and disabled individuals."  *Id.* (citing 42 U.S.C. § 1395 et seq.).  Medicare is more akin to a typical insurance program, in that "because Medicare does not cover the full cost of care, patients are responsible for paying deductible and coinsurance fees for inpatient hospital services received."  *Id.*  Medicare covers fewer services than Medicaid does.

[3] Under the Public Health Service Act, the duration of the PHE is determined by the Secretary of Health and Human Services, and is extended in approximately 90-day increments. 42 U.S.C. § 247d(a).  At present, absent another extension, the PHE will end in January 2023.  *See* "Renewal of Determination that a Public Health Emergency Exists," available at https://aspr.hhs.gov/legal/PHE/Pages/covid19-13Oct2022.aspx (last visited October 27, 2022).

The statute contains two exceptions to this requirement: states were not required to maintain Medicaid benefits to any individual who moved out of the state or who voluntarily withdrew from the program.  *Id.* at 209.

Over the course of the next several months, the Department of Health and Human Services ("HHS"), through the Centers for Medicare and Medicaid Services, issued several pieces of guidance indicating that the FFCRA prohibited states from either removing individuals from Medicaid or from reducing their level of benefits.  *See* ECF No. 3-5 at 7–9, 40–42, 115–16.[4]  On November 6, 2020, however, HHS published an interim final rule ("IFR")[5] that reversed this position and that required[6] states to alter an individual's benefits if that individual fell into one of three exceptions defined for the first time in the IFR.  *See* Additional Policy and Regulatory Revisions in Response to the COVID-19 Public Health Emergency, 85 FR 71142-01, 71162.  One of these exceptions required reduction of benefits to individuals who, during the course of the PHE, became ineligible for the coverage they were receiving but qualified for another level of coverage instead.  In those cases, the IFR mandated the removal of individuals to the level of coverage for which they were qualified, even if that resulted in an overall reduction in coverage.[7]  The IFR was implemented without any notice-and-comment period.

---

[4] These pieces of guidance are no longer publicly available, but there is no dispute as to the authenticity of the copies of the guidance Plaintiffs attached to the Motion.  Note that these page numbers refer to the page numbers assigned by the district's electronic case filing system ("ECF"), as the page numbers otherwise repeat themselves, making the relevant information difficult to locate.  The court does not use ECF's pagination for any other document except for the one filed at ECF No. 3-5.

[5] The IFR publishes a number of regulations, most of which are not relevant here.  Reference to the IFR in this ruling will refer only to the portion dealing with the Medicaid maintenance provision in the FFCRA.

[6] While the IFR itself was unclear as to whether the new regulation was permissive or proscriptive, later guidance from HHS clarified that the measures were mandatory.  *See* ECF No. 3-5 at 190–91.

[7] The other exceptions dealt with individuals who were determined always to have been ineligible for Medicaid coverage, and in-status non-citizens who ceased to qualify for Medicaid coverage (because they were found to have been in the country for fewer than five years, and to have been no longer pregnant nor a child).

Each named plaintiff is an individual who was enrolled in Medicaid during the PHE, but whose benefits were reduced pursuant to the IFR. Three are residents of Connecticut, one is a resident of Delaware, and one is a resident of Nebraska. All the named plaintiffs save Plaintiff Wilson testified before the undersigned to describe their circumstances.

Plaintiff Carr testified that she is a Connecticut resident with a neurological condition called Friedrich's ataxia that renders her unable to perform many activities of daily living. She explained that she requires assistance getting into and out of bed, and into and out of the shower (both of which require the use of a device called a Hoyer lift, which must be operated by another individual). She illustrated her inability to hold documents or to turn their pages, mentioned that she uses a motorized wheelchair with hand controls, and explained that she needs assistance getting dressed, eating, and using the restroom. Ms. Carr testified that she has been able to remain in her home because of her home health aides (who assist her for seventy hours per week, and whose services are funded by Medicaid), and that she has used the assistance of an aide throughout her entire life; however, her full Medicaid coverage was terminated earlier this year. The state Medicaid agency presently continues to pay for her home health aides,[8] but absent injunctive relief she will be unable to afford her aides and likely will require institutionalization.

Plaintiff Moore testified that she is a Connecticut resident with a severe vascular condition that prevents her from performing activities of daily living without assistance. Ms. Moore explained that she has difficulty getting around, preparing meals, and standing

---

[8] Defendant has agreed not to enforce the IFR with respect to Plaintiffs Carr and Moore, and it was noted in oral argument that the Connecticut agency has responded by returning both plaintiffs to full benefits. *See* ECF No. 20.

for long periods of time.  She uses a walker and requires assistance from an aide in getting out of bed, using the restroom, bathing, paying her bills, and preparing her meals. Her in-home aide assists her for forty hours per week, as funded by Medicaid, which she no longer could afford when her full Medicaid coverage was terminated earlier this year. She was able to extend her benefits through an alternative program for individuals with significant debt, but that extension expired such that she went without assistance for five weeks.  She testified that during that time without assistance, she often was unable to get out of bed, to the point where she ate unheated, canned food that she kept near her bed, and that she fell on more than one occasion (including once in the shower) when she attempted the activities for which she no longer had help.  She also has been returned to full Medicaid benefits temporarily, but she may require institutionalization if those benefits are terminated.  She voiced concern over residing in an assisted living facility, noting her belief that the caregivers would not be as nice, that she would lose her independence, and that she would be more susceptible to COVID (which she recently had overcome).

Plaintiff Shaw lives in Nebraska.  She testified that she was receiving Medicaid from that state's program, and that it funded dental appointments, a hip replacement, and treatment for a cancerous growth on her shoulder.  Medicaid also covered treatment with a cardiologist, for high blood pressure, and for medical care related to an emphysema diagnosis.  However, Ms. Shaw's Medicaid benefits were reduced earlier this year, rendering her unable to afford her ongoing treatment.  As a result, she has not attended all of the appointments her conditions require, and she has been financially unable to seek medical attention for new ailments.

Plaintiff Katz testified that she is a resident of Delaware who suffers from severe rheumatoid arthritis, osteoarthritis, fibromyalgia, chronic obstructive pulmonary disorder (COPD), high blood pressure, anxiety, depression, coronary artery disease, and a history of other heart problems. She reported increased difficulty with activities of daily living, such as dressing herself and walking. Ms. Katz had been on a Medicare Savings Plan ("MSP")[9] which covered regular infusion treatments for her rheumatoid arthritis, and all of her deductibles and copays for her medical services. As allowed by the IFR, however, she was removed to a different MSP when the state Medicaid agency determined that she made *one dollar* more than was permitted by her previous MSP. *See* ECF No. 44-4 at 2. If her new MSP does not cover her doctors' visits or the cancer screening her pulmonologist recommends, it is unlikely that she will be able to continue much of her medical care. *Id.* at 3. Her infusions were being provided by the manufacturer of the infusion pursuant to a charitable program, but the manufacturer has notified Plaintiff Katz that they will cease to provide this assistance after January 1, 2023. *See* ECF No. 68-1. She testified that affording these infusions will require her to deplete her limited savings, and that without the infusions she will be unable to function. She explained that despite her high threshold for pain, she is likely to be bedridden without proper treatment, and she also expressed COVID concerns because of her COPD-related breathing difficulties. All of this has caused her anxiety and loss of sleep, which she explained negatively affects her rheumatoid arthritis.

---

[9] MSPs are savings plans designed to ease the costs of Medicare (which itself has less robust coverage than does Medicaid), by allowing the out-of-pocket expenses of Medicare to be paid through Medicaid. There are several types of MSPs that provide different levels of assistance. *See* 42 U.S.C. § 1396d(p).

Plaintiff Wilson is a Connecticut resident who has Multiple Sclerosis and a history of seizures.  *See* ECF No. 3-4 at 1.  The medications she uses to control her seizures have caused her dental problems.  *Id.*  She was transitioned from full Medicaid coverage to an MSP, which has resulted in a reduction of benefits.  *Id.* at 2.  She now has only minimal dental coverage and her rides to medical appointments no longer are subsidized.  *Id.* at 3.

Plaintiffs assert that the reduction in their Medicaid benefits was unlawful, and that the IFR violates the Administrative Procedures Act ("APA").  Though, in their Motion, Plaintiffs asked the court to order that Defendant stay enforcement of the IFR, they revised their prayer for relief at oral argument, now asking that the court enjoin Defendant from enforcing the IFR pending the resolution of this action.[10]

## II.   LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."

---

[10] For the first time at oral argument, Plaintiffs' counsel changed the plea for relief to ask that Defendant be ordered to require the relevant state agencies to reinstate Plaintiffs' full Medicaid coverage, since merely enjoining Defendant from enforcing the IFR would not guarantee that the state agencies would return Plaintiffs to their previous level of assistance.  However, the respective state agencies are not parties in this action and thus are not themselves subject to any injunction that might be issued by this court.  *See* Fed. R. Civ. P. 65(d)(2).  Plaintiffs' counsel asserted that the court has the authority to order this relief, pointing to a recent HHS publication in which the department notes it is considering requiring states to return to the same level of benefits they had before the IFR was published all individuals whose benefits were terminated or reduced pursuant to the IFR.  *See* Medicaid Program; Temporary Increase in Federal Medical Assistance Percentage (FMAP) in Response to the COVID-19 Public Health Emergency (PHE); Reopening of Public Comment Period, 87 FR 58456-01 at 58458.  Still, this argument was not raised in the Motion, and Defendant has argued, in the context of standing, that the state agencies determine Medicaid eligibility (and not HHS).  Therefore, it is unclear whether the court can grant this revised prayer for relief.  If Defendant is without authority to mandate eligibility standards for the states' Medicaid programs, then the court cannot order Defendant to take action beyond such authority.  Given this uncertainty, and also because the request was only made after the Motion was fully briefed (and in the waning moments of a day-long hearing), the court will not consider granting this new request.

*Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, (Mem)–26 (2d Cir. 2018) (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)) (per curiam) (alteration and emphasis in original) (internal quotation marks omitted).   To carry this burden, Plaintiffs must show (1) a likelihood of success on the merits, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in Plaintiffs' favor, and (4) that the public interest "would not be disserved" by the issuance of an injunction.   *Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (internal quotation marks omitted).   When the government is a party to the action, as is the case here, these final two factors merge.   *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020), cert. granted sub nom. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021), and cert. dismissed sub nom. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1292 (2021).

## III.   DISCUSSION

Plaintiffs argue that they satisfy all the requirements for a preliminary injunction. Defendant responds that Plaintiffs have satisfied none of the requirements, and moreover, that Plaintiffs lack standing to bring their claims, both generally and, more specifically, as to those parts of the IFR which did not affect their benefits.   The court will discuss the jurisdictional question first.

### a.  Standing and Scope

To establish standing, Plaintiffs must show (1) that they are in danger of suffering an "injury in fact" – namely, that they face an ill that is concrete and particularized, the threat of which is not conjectural or hypothetical; (2) that the alleged injury is fairly

traceable to the challenged action of the defendant; and (3) that a favorable judicial decision likely will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Defendant does not contest that Plaintiffs have shown the first two of these requirements, but he argues that Plaintiffs have failed to show the third. Specifically, he asserts that Plaintiffs have no standing to bring this action because their injuries resulted from *state* action, not federal action. Because Medicaid is a state-run program, Defendant asserts that the HHS cannot redress any injuries caused by the respective state agencies' reduction of Plaintiff's benefits; that only the state agencies themselves can reinstate Plaintiffs' benefits, and that the states are not parties to this action.[11]  Plaintiffs respond that the course of this case belies Defendant's position, since, at least with respect to Plaintiffs Moore and Carr, Defendant already has agreed not to enforce the IFR such that those plaintiffs have retained their full Medicaid benefits pending the court's instant ruling.

The court finds Plaintiffs' argument persuasive. It is true that standing may be more difficult to establish where "a plaintiff's asserted injury arises from the government's

---

[11] Defendant further argues that even if the court were to stay enforcement of the IFR (as initially asked by Plaintiffs in the instant motion), it is not certain that such action would be enough to reinstate Plaintiffs' former level of benefits, since the temporary increase in federal funding for Medicaid programs is optional; accordingly, the states could decide to stop accepting the additional funding, and thus would cease to be bound by the conditions of acceptance. To the extent Defendant argues that the states could forego the increase in funding at any time for no reason at all, the court declines to engage in mere speculation. And to the extent Defendant argues that the states may forego the increase in FMAP rather than maintain thousands of individuals on costly benefits for which they otherwise are ineligible, this argument assumes that the undersigned may enter an order enjoining enforcement of the IFR altogether, and the court already has indicated that its order will deal with the named plaintiffs, alone. For this reason, the court need not make any determinations regarding the admissibility of certain exhibits Defendant submitted at the October 26 hearing: comments of two states (other than those where any named plaintiff resides) indicating how costly it would be for those (non-Plaintiff states) to reenroll individuals whose benefits were terminated pursuant to the IFR. The court notes, however, that the cost of reenrolling individuals is distinct from the cost of maintaining their enrollment, and also that Defendant's argument loses its force when applied to only one or three named plaintiffs. Defendants do not argue that the state agencies will forego the increased FMAP rather than to continue full Medicaid benefits as to the named plaintiffs, alone (such an argument would be tenuous, indeed) and so the court will not address this argument here.

allegedly unlawful regulation (or lack of regulation) of someone [other than the plaintiff]," but even in such cases, standing is not entirely precluded. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). In those cases, the plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* Moreover, "to have standing, a federal plaintiff must show only that a favorable decision is *likely* to redress his injury, not that a favorable decision *will inevitably* redress his injury." *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994) (emphasis in original).

The court finds that Plaintiffs have adduced sufficient facts to show that their injury likely would be redressed by this court's action. While it is true that the several states administer the Medicaid program, they do so in accordance with federal regulations. Here, where those regulations are mandatory, the states are powerless to redress Plaintiffs' injuries without an alteration to the regulatory framework, which alteration the states also are powerless to effect. In that way, it is clear that an injunction against enforcement of the IFR is necessary to produce the relief Plaintiffs seek. To find that Plaintiffs do not have standing to challenge the IFR is tantamount to saying that there are no judicial means by which Plaintiffs may seek relief.

Furthermore, as Plaintiffs point out, there already is evidence that enjoining Defendant would produce Plaintiffs' desired outcome, and even if there is a chance that the state agencies would not reinstate all the plaintiffs' full Medicaid benefits in the event of the court's favorable action, that only shows that a favorable result in the present action *might not* redress Plaintiffs' injuries. Regardless, Plaintiffs' showing of standing survives. *Id.*; *see also Walker v. Azar,* No. 20CV2834FBSMG, 2020 WL 4749859 (E.D.N.Y. Aug.

17, 2020), *appeal withdrawn sub nom. Walker v. Becerra,* No. 20-3580, 2021 WL 5548357 (2d Cir. Nov. 22, 2021), *and appeal withdrawn sub nom. Walker v. Becerra,* No. 20-3580, 2021 WL 5548357 (2d Cir. Nov. 22, 2021) (finding standing where it is predictable that a certain course of action will result from an injunction).  This is not a case where it is "merely speculative" that Plaintiffs' injuries will be redressed by injunctive relief. *Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008).  Not only has Connecticut shown that it likely would reinstate Plaintiff Wilson to full Medicaid benefits, but absent enforcement of the IFR, it is likely that Nebraska and Delaware would revert to the only other guidance ever published.

Finally, the court finds that any risk that the states will fail to reinstate Plaintiffs' previous level of benefits adequately can be addressed through careful construction of any ordered relief.  Plaintiffs ask the court to order Defendant to require the relevant state agencies to return Plaintiffs to their previous level of benefits.  This request did not arise in Plaintiff's Motion, but instead came in the seventh hour of a day-long hearing, and therefore was not fully argued.  Moreover, the request was unsupported by any direct authority specifically indicating that Defendant is authorized to order states to enroll particular individuals into their Medicaid program, and therefore it is unclear whether it is within the court's power to grant this new prayer for relief.  Defendant's argument that only the several states are responsible for determining Medicaid eligibility itself implies that such relief is *not* within the court's authority.  However, the court need not deeply explore this question, because there is a satisfactory alternative that is particularly appropriate given the limited scope of this court's referral: the court simply may order Defendant to revert to the HHS's previous guidance with respect to these five individuals.

In this way, the court would not require Defendant to perform any action which HHS has not already demonstrated the authority to perform.  At the same time, there is little risk that Plaintiffs' injuries would not be redressed by judicial action.

Next, Defendant argues that Plaintiffs' challenge to the IFR is too broad; that while the IFR identified several exceptions to the mandate that Medicaid benefits could not be reduced or terminated, Plaintiffs' injury resulted from only one of those reasons. Defendants assert that any injunctive relief which may be ordered should be narrowly tailored to just these Plaintiffs, and to only that portion of the regulation which affected their benefits.  Plaintiffs reply that their standing to raise APA claims allows them to argue the public interest.

Whether Plaintiffs may seek to enjoin enforcement of all parts of the IFR is not a question which needs to be answered here.  Because the referral to the undersigned permits only a determination of whether the named plaintiffs alone are entitled to an injunction, any such relief which may proceed from this order necessarily will only deal with the part of the IFR which negatively impacted Plaintiffs, namely, the subsection dealing with individuals who became eligible for other benefit plans during the PHE.

In sum, the court rejects Defendant's jurisdictional arguments, but agrees, on grounds other than those Defendant puts forth, that the scope of this discussion should be narrowly tailored to only that part of the IFR which has affected Plaintiffs' benefits, and to address the claims of only these named Plaintiffs.

The court thus will proceed to the merits of the Motion.

### b.  Likelihood of Success

To show a likelihood of success, Plaintiffs need not prove that they are certain to prevail in this action, but they must make a clear showing that they are likely to succeed on their claims.  *Donohue v. Paterson*, 715 F. Supp. 2d 306, 314 (N.D.N.Y. 2010).  Where an injunction would alter the status quo, this standard is heightened such that a plaintiff must show a substantial likelihood of success.  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999).[12]

Plaintiffs assert that they have shown such substantial likelihood of success, based on their arguments that (1) the HHS failed to engage in the notice-and-comment period before publishing the IFR and cannot show good cause for the omission, and (2) the IFR conflicts with the unambiguous statutory provision it purports to interpret.  A showing of a likelihood of success on either claim will suffice to carry Plaintiffs' burden.  Defendant responds that Plaintiffs are not likely to succeed on the merits because there was good cause to promulgate the IFR without a notice-and-comment period, and because the IFR is a reasonable interpretation of an ambiguous statute (thereby rendering it worthy of deference).

"Under the APA, before promulgating a rule an agency must publish '[g]eneral notice of proposed rule making ... in the Federal Register,' as well as 'an opportunity to

---

[12] Both parties accept that Plaintiffs are subject to this heightened standard, but the court is not convinced. The question of whether an injunction would alter the status quo is more complicated than whether an injunction would order action or inaction.  *See LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994) ("To preserve the status quo a court may require the parties to act or to refrain from acting.").  The "status quo" to be preserved is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120–21 (2d Cir. 2014).  In this case, it seems that the last uncontested position was reflected in Defendant's initial guidance requiring states to maintain Medicaid participants at the same level of benefits throughout the PHE, and therefore, returning Plaintiffs to that status quo should trigger no alteration in their burden.  Nevertheless, the court need not make a determination on this point, since it is clear that Plaintiffs have carried their burden under either standard.

participate in the rule making through submission of written data, views, or arguments.'" *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 113 (2d Cir. 2018) (quoting 5 U.S.C. § 553) (alterations in original).   There is an exception to this requirement, though, where an agency "for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).   This exception, however, "should be narrowly construed and only reluctantly countenanced."   *Nat. Res. Def. Council*, 894 F.3d at 114.   It is the agency's burden to show that the exception applies.   *Id.* at 113-14.

Defendant asserts that there was good cause to forego notice and comment because any delay to implementation of the IFR might have resulted in serious harm.   He asserts that given the evolving COVID crisis, it was necessary to quickly ensure that states were able to continue to claim the increase in federal Medicaid funding.   He posits that the states may have declined the increased FMAP altogether in the face of cost concerns, or states may have had to resort to lowering provider reimbursements, which may have reduced the supply of providers.   Plaintiffs argue that this is unreasonable speculation given that no state even threatened to reject the additional federal funding.

Where providing notice of a proposed rule and an opportunity to comment on it would cause a delay which could result in serious harm, the good cause exception may apply. *Nat. Res. Def. Council*, 894 F.3d at 114 (quoting *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004)).   But it is far from clear that Defendant has carried his burden of showing a threat of serious harm.

The court makes the initial observation that Defendant's proffered justification for waiving notice and comment appears to be post hoc reasoning.   In the IFR there is a

14

section entitled "Waiver of Proposed Rulemaking" in which the HHS acknowledged its obligations to provide notice and a period for comment[13] but also noted the fact that good cause can excuse this obligation.   It then went on to state that the World Health Organization and the HHS had declared public health emergencies related to the COVID-19 pandemic, and that the PHE declared by the HHS was still ongoing.   It then reads as follows:

> It is critically important that the Departments implement the policies in this [IFR] as quickly as possible. As the United States is in the midst of the PHE for COVID-19, the Departments find good cause to waive notice of proposed rulemaking under the APA, 5 U.S.C. 553(b)(B). . . .[14]
>
> In this [IFR], consistent with section 1902(a)(4) and (a)(19) of the [Social Security] Act, the Department adds a new subpart G to 42 CFR part 433 to provide states with more flexibility, subject to certain safeguards, in implementing the requirement in section 6008(b)(3) of the FFCRA that states maintain Medicaid beneficiary enrollment in order to receive the temporary increase in Federal funding in the FFCRA. This temporary funding increase is effective beginning January 1, 2020 and could extend through the last day of the calendar quarter in which the PHE for COVID-19, including any extensions, terminates, if the state claims the temporary funding increase in that quarter. This provision of the [IFR] is immediately necessary to ensure that states can determine eligibility and provide care and services during the PHE in a manner that is consistent with simplicity of administration and the best interests of beneficiaries and also claim the temporary funding increase.

Additional Policy and Regulatory Revisions in Response to the COVID-19 Public Health Emergency, 85 FR 71142-01, 71181.

---

[13] The agency also acknowledges its obligation under the APA to make a final rule effective no sooner than 30 days after publication, and asserts good cause to waive this requirement as well.

[14] The omitted text deals with declining to delay the effective date of the IFR.

The entire justification is (1) an assertion, without specific reason, that issuing the IFR as quickly as possible is critical, (2) a reference to the pandemic, and (3) a vague reference to administrative simplicity and beneficiaries' best interests.  There is no reference to the possibility of states entirely declining the FMAP increase, or a description of any threat to beneficiaries if the number of providers should be reduced.  The justification that Defendant now provides apparently is derived not from the original description of good cause, but from the original description of the HHS's reasons for moving away from its previous interpretation of the statute, which is published much earlier in the IFR and which never mentions the notice-and-comment requirement, or good cause.  It is not clear to the court that good cause may be found in a justification retrofitted from other sections of a rule.  *See Levesque v. Block*, 723 F.2d 175, 179–80 (1st Cir. 1983) (rejecting a post hoc argument that notice and comment was not required to implement a rule promulgated by the Department of Agriculture).

Looking to the reasoning laid out in the IFR itself, it seems clear that the original justification for waiving notice and comment lacks the specificity that Defendant himself asserts is required.  *See Biden v. Missouri*, 142 S. Ct. 647, 654 (2022).  There is no reference to any harm at all, much less to whom the harm would inure or how a delay might cause that harm.  Indeed, if the original justification itself satisfied this requirement for specificity, Defendant would not have gone looking for further support elsewhere in the IFR.  *Cf. Hawaii Helicopter Operators Ass'n v. F.A.A.*, 51 F.3d 212, 214 (9th Cir. 1995) (finding good cause for waiver of notice and comment where the agency specifically noted, in its justification for waiver, that recent air travel accidents indicated an urgent safety problem that needed immediate attention).

16

But even considering Defendant's post hoc argument that notice and comment might have caused sates entirely to forego the FMAP increase, or indirectly might have caused a shortage of Medicaid providers, the court cannot find that Defendant has made the requisite showing.  Presuming (without deciding) that such harms would have been sufficiently serious, Defendant has failed to show that these harms could have resulted from a 30-day delay.  The IFR never references an imminent threat, and given that the previous guidance had been in place for several months, it does not appear that the IFR immediately needed to stave off any such harms.  While it cannot be disputed that the PHE was ongoing at the time the IFR was published, the specific threats that Defendant now asserts the IFR was designed to address were not emergent in nature.  *See Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 205 (2d Cir. 2004) (finding an absence of good cause where there was no emergency).

The court finds that Plaintiffs have shown a substantial likelihood of defeating the good cause justification Defendant has proffered.  Because Plaintiffs have carried their burden with respect to this element on their procedural claim, the court need not discuss the likelihood of success on the substantive claim.

### c.  Irreparable Harm

Within this circuit, irreparable harm is "harm shown to be non-compensable in terms of money damages."  *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 55 (2d Cir. 2004) (quoting *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113–14 (2d Cir.2003)).  Plaintiffs assert that they will experience immediate and irreparable harm absent injunctive relief because in the absence of an injunction, they will be unable to afford necessary medical care, including their in-home health aides, and

some even may be required to reside in a nursing home, where they are more susceptible to the coronavirus.  They assert that the harm to each of them that will ensue if injunctive relief is not ordered cannot be ameliorated through a monetary award at a later time. Defendant replies that the fact that it took so long for Plaintiffs to file suit shows that the harm is not to imminent or emergent.[15]

While it is true that this action was initiated a year and a half after the IFR took effect, Defendant's own opposition admits that it was initiated only roughly six months after Plaintiffs learned their benefits would be reduced.  This hardly is a great delay, particularly considering: the stopgap measures Plaintiffs first pursued within their states (appeals and spenddown plans, for instance); the Plaintiffs' age, physical limitations, and indigency; and Plaintiffs' probable lack of knowledge regarding the legal process. Moreover, the court is aware of the cruel irony that the deprivation of Medicaid benefits exacerbates the difficulty for individuals like the named plaintiffs to recover those benefits; without their aides, Plaintiff Moore could not get out of bed, much less make her way to a courthouse, and the reduction in Plaintiff Katz's benefits means that she must pay for necessary medical treatments out of her savings, leaving her with even less money to pay court costs and attorneys' fees.  Thus, Defendant's argument is unpersuasive.

A gap in healthcare is not likely to result in the sort of injury which can be corrected with a monetary award, particularly in Plaintiffs' age of seniority.  Plaintiffs already are reporting that they are declining to seek medical assistance for serious conditions, limiting their visits to doctors for ongoing care, and facing the threat of residing at a nursing home

---

[15] Defendant also argues, again, that it is not certain that the relevant states will continue to opt into the temporary funding scheme.  Again, though, this argument is premised upon the idea that the court may invalidate the entire IFR, which is not a potential outcome of this discussion.  Therefore, the court, as before, will ignore this argument here.

(during a pandemic in which nursing home fatalities are distressingly frequent) in order to receive the level of care they require for everyday functioning. The enforcement of the IFR has cost these individuals the level of health which only follows early and consistent medical care and treatment. No monetary award can halt the progression of cancer, reverse the effects of COVID, or retract periods of anxiety and pain. These harms clearly are non-compensable in monetary damages. *See LaForest*, 376 F.3d at 56 (finding district court did not abuse its discretion in holding that retirees had shown irreparable harm in a reduction in healthcare benefits which would have adverse health results).

Thus, Plaintiffs unequivocally have shown that they have satisfied this element.

### d. Balance of Hardships/Public Interest

Finally, Plaintiffs assert that they satisfy the final element of the preliminary injunction analysis because the government will suffer no hardship if it is delayed from enforcing the IFR during the pendency of this action. Defendant asserts that this balance hangs in his favor because the risk that states will forego the increased federal funding far outweighs the harms to these plaintiffs. Defendant's argument, however, assumes that injunctive relief will affect the entire country. As previously noted, the scope of review in the referral to the undersigned only extends to the situations of the named plaintiffs. In context, Defendant's alteration of the undersigned's scope of review undermines his argument completely. The court finds that the harm that will befall and that is already affecting the plaintiffs outweighs the cost to the various states to continue to fund one or three individuals' healthcare.

And with that, Plaintiffs have shown that they are entitled to injunctive relief.

## IV.    CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Plaintiffs' motion for a preliminary injunction is **GRANTED in part**.  Defendant is ordered to refrain from enforcing the IFR with respect to the named plaintiffs for the pendency of this action, and to reinstate its previous guidance with respect to the named plaintiffs.  Defendant is further ordered to inform (within one week of the date of this order) the relevant state agencies of this revised position with respect to the named plaintiffs.

**IT IS SO ORDERED** at Hartford, Connecticut, this 7th day of November, 2022.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE